# CARLSON, DIRECTOR, FEDERAL BUREAU OF PRISONS, ET AL. *v.* GREEN, ADMINISTRATRIX

No. 78–1261.   Argued January 7, 1980—Decided April 22, 1980

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, and STEVENS, JJ., joined. POWELL, J., filed an opinion concurring in the judgment, in which STEWART, J., joined, *post,* p. 25. BURGER, C. J., *post,* p. 30, and REHNQUIST, J., *post,* p. 31, filed dissenting opinions.

*Deputy Solicitor General Geller* argued the cause for petitioners. On the briefs were *Solicitor General McCree, Acting*

*Assistant Attorney General Daniel, Robert E. Kopp,* and *Barbara L. Herwig.*

*Michael Deutsch* argued the cause for respondent. With him on the brief was *Charles Hoffman.**

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Respondent brought this suit in the District Court for the Southern District of Indiana on behalf of the estate of her deceased son, Joseph Jones, Jr., alleging that he suffered personal injuries from which he died because the petitioners, federal prison officials, violated his due process, equal protection, and Eighth Amendment rights.[1] Asserting jurisdiction under 28 U. S. C. § 1331 (a), she claimed compensatory and punitive damages for the constitutional violations. Two questions are presented for decision: (1) Is a remedy available directly under the Constitution, given that respondent's allegations could also support a suit against the United States

---

*\*Alvin J. Bronstein, Bruce J. Ennis,* and *William E. Hellerstein* filed a brief for the American Civil Liberties Union Foundation, Inc., et al. as *amici curiae* urging affirmance.

*John B. Jones, Jr., Norman Redlich, William L. Robinson, Norman J. Chachkin,* and *Richard S. Kohn* filed a brief for the Lawyers' Committee for Civil Rights Under Law as *amicus curiae.*

[1] More specifically, respondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contraindicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

under the Federal Tort Claims Act?[2] And (2) if so, is survival of the cause of action governed by federal common law or by state statutes?

## I

The District Court held that under *Estelle* v. *Gamble*, 429 U. S. 97 (1976), the allegations set out in note 1, *supra*, pleaded a violation of the Eighth Amendment's proscription against infliction of cruel and unusual punishment,[3] giving rise to a cause of action for damages under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). The court recognized that the decedent could have maintained this action if he had survived, but dismissed the complaint because in its view the damages remedy as a matter of federal law was limited to that provided by Indiana's survivorship and wrongful-death laws and, as the court construed those laws, the damages available to Jones' estate failed to meet § 1331 (a)'s $10,000 jurisdictional-amount requirement. The Court of Appeals for the Seventh Circuit agreed that an Eighth Amendment violation was pleaded under *Estelle* and that a cause of action was stated under *Bivens*, but reversed the holding that § 1331 (a)'s jurisdictional-amount requirement was not met.[4] Rather, the Court of Appeals held that

---

[2] This question was presented in the petition for certiorari, but not in either the District Court or the Court of Appeals. However, respondent does not object to its decision by this Court. Though we do not normally decide issues not presented below, we are not precluded from doing so. *E. g., Youakim* v. *Miller*, 425 U. S. 231 (1976). Here, the issue is squarely presented and fully briefed. It is an important, recurring issue and is properly raised in another petition for certiorari being held pending disposition of this case. See *Loe* v. *Armistead*, 582 F. 2d 1291 (CA4 1978), cert. pending *sub nom. Moffitt* v. *Loe*, No. 78–1260. We conclude that the interests of judicial administration will be served by addressing the issue on its merits.

[3] Petitioners do not contest the determination that the allegations satisfy the standards set out in *Estelle*.

[4] The relevant Indiana law provides that a personal injury claim does not survive where the acts complained of caused the victim's death. Ind.

§ 1331 (a) was satisfied because "whenever the relevant State survival statute would abate a *Bivens*-type action brought against defendants whose conduct results in death, the federal common law allows survival of the action." 581 F. 2d 669, 675 (1978). The court reasoned that the Indiana law, if applied, would "subvert" "the policy of allowing complete vindication of constitutional rights" by making it "more advantageous for a tortfeasor to kill rather than to injure." *Id.*, at 674. We granted certiorari. 442 U. S. 940 (1979). We affirm.

## II

*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Such a cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." 403 U. S., at 396; *Davis* v. *Passman,* 442 U. S. 228, 245 (1979). The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly

---

Code § 34-1-1-1 (1976). Indiana does provide a wrongful-death cause of action for the personal representative of one whose death is caused by an alleged wrongful act or omission. Damages may "includ[e], but [are] not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings." But if the decedent is not survived by a spouse, dependent child, or dependent next of kin, then the recovery is limited to expenses incurred in connection with the death. Ind. Code § 34-1-1-2 (1976).

The District Court read the complaint in this case as stating claims under both §§ 34-1-1-1 and 34-1-1-2. Accordingly, the court assumed that recovery on the claim was limited to expenses (all of which would be paid by the Federal Government) only because Jones died without a spouse or any dependents. The Court of Appeals read the complaint as stating only a survivorship claim on behalf of Jones under § 34-1-1-1. Thus it assumed that the claim would have abated even if Jones had left dependents or a spouse. 581 F. 2d 669, 672, n. 4 (1978). Resolution of this conflict is irrelevant in light of our holding today.

under the Constitution and viewed as equally effective. *Bivens, supra,* at 397; *Davis* v. *Passman, supra,* at 245–247.

Neither situation obtains in this case. First, the case involves no special factors counselling hesitation in the absence of affirmative action by Congress. Petitioners do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate. *Davis* v. *Passman, supra,* at 246. Moreover, even if requiring them to defend respondent's suit might inhibit their efforts to perform their official duties, the qualified immunity accorded them under *Butz* v. *Economou,* 438 U. S. 478 (1978), provides adequate protection. See *Davis* v. *Passman, supra,* at 246.

Second, we have here no explicit congressional declaration that persons injured by federal officers' violations of the Eighth Amendment may not recover money damages from the agents but must be remitted to another remedy, equally effective in the view of Congress. Petitioners point to nothing in the Federal Tort Claims Act (FTCA) or its legislative history to show that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations.[5] FTCA was enacted long before *Bivens* was decided, but when Congress amended FTCA in 1974 to create a cause of action against the United States for intentional torts committed by federal law enforcement officers, 28 U. S. C. § 2680 (h), the congressional comments accompanying

---

[5] To satisfy this test, petitioners need not show that Congress recited any specific "magic words." See the dissenting opinion of THE CHIEF JUSTICE, *post,* at 31, and n. 2. Instead, our inquiry at this step in the analysis is whether Congress has indicated that it intends the statutory remedy to replace, rather than to complement, the *Bivens* remedy. Where Congress decides to enact a statutory remedy which it views as fully adequate only in combination with the *Bivens* remedy, *e. g.,* 28 U. S. C. § 2680 (h), that congressional decision should be given effect by the courts.

that amendment made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action:

> "[A]fter the date of enactment of this measure, innocent individuals who are subjected to raids [like that in *Bivens*] will have a cause of action against the individual Federal agents *and* the Federal Government. Furthermore, this provision should be viewed as a *counterpart* to the *Bivens* case and its progeny [*sic*], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual Government officials involved)." S. Rep. No. 93–588, p. 3 (1973) (emphasis supplied).

In the absence of a contrary expression from Congress, § 2680 (h) thus contemplates that victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States as well as a *Bivens* action against the individual officials alleged to have infringed their constitutional rights.

This conclusion is buttressed by the significant fact that Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy. See 38 U. S. C. § 4116 (a), 42 U. S. C. § 233 (a), 42 U. S. C. § 2458a, 10 U. S. C. § 1089 (a), and 22 U. S. C. § 817 (a) (malpractice by certain Government health personnel); 28 U. S. C. § 2679 (b) (operation of motor vehicles by federal employees); and 42 U. S. C. § 247b (k) (manufacturers of swine flu vaccine). Furthermore, Congress has not taken action on other bills that would expand the exclusivity of FTCA. See, *e. g.*, S. 695, 96th Cong., 1st Sess. (1979); H. R. 2659, 96th Cong., 1st Sess. (1979); S. 3314, 95th Cong., 2d Sess. (1978).

Four additional factors, each suggesting that the *Bivens* remedy is more effective than the FTCA remedy, also support our conclusion that Congress did not intend to limit respond-

ent to an FTCA action. First, the *Bivens* remedy, in addition to compensating victims, serves a deterrent purpose. See *Butz* v. *Economou, supra,* at 505.[6] Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States. It is almost axiomatic that the threat of damages has a deterrent effect,[7] *Imbler* v. *Pachtman,* 424 U. S. 409, 442 (1976) (WHITE, J., concurring in judgment), surely particularly so when the individual official faces personal financial liability.

Petitioners argue that FTCA liability is a more effective deterrent because the individual employees responsible for the Government's liability would risk loss of employment[8] and because the Government would be forced to promulgate corrective policies. That argument suggests, however, that the superiors would not take the same actions when an employee is found personally liable for violation of a citizen's constitutional rights. The more reasonable assumption is that responsible superiors are motivated not only by concern for the public fisc but also by concern for the Government's integrity.

Second, our decisions, although not expressly addressing

---

[6] Title 42 U. S. C. § 1983 serves similar purposes. See, *e. g., Robertson* v. *Wegmann,* 436 U. S. 584, 590–591 (1978); *Carey* v. *Piphus,* 435 U. S. 247, 256 (1978); *Mitchum* v. *Foster.* 407 U. S. 225, 242 (1972); *Monroe* v. *Pape,* 365 U. S. 167, 172–187 (1961).

[7] Indeed, underlying the qualified immunity which public officials enjoy for actions taken in good faith is the fear that exposure to personal liability would otherwise deter them from acting at all. See *Butz* v. *Economou,* 438 U. S. 478, 497 (1978); *Scheuer* v. *Rhodes,* 416 U. S. 232, 240 (1974).

[8] Some doubt has been cast on the validity of the assumption that there exist adequate mechanisms for disciplining federal employees in such cases. See Testimony of Griffin B. Bell, Attorney General of the United States, Joint Hearing on Amendments to the Federal Tort Claims Act before the Subcommittee on Citizens and Shareholders Rights and Remedies and the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 95th Cong., 2d Sess., pt. 1, p. 6 (1978).

and deciding the question, indicate that punitive damages may be awarded in a *Bivens* suit. Punitive damages are "a particular remedial mechanism normally available in the federal courts," *Bivens,* 403 U. S., at 397, and are especially appropriate to redress the violation by a Government official of a citizen's constitutional rights. Moreover, punitive damages are available in "a proper" § 1983 action, *Carey* v. *Piphus,* 435 U. S. 247, 257, n. 11 (1978) (punitive damages not awarded because District Court found defendants "did not act with a malicious intention to deprive respondents of their rights or to do them other injury"),[9] and *Butz* v. *Economou,* suggests that the "constitutional design" would be stood on its head if federal officials did not face at least the same liability as state officials guilty of the same constitutional transgression. 438 U. S., at 504. But punitive damages in an FTCA suit are statutorily prohibited. 28 U. S. C. § 2674. Thus FTCA is that much less effective than a *Bivens* action as a deterrent to unconstitutional acts.

Third, a plaintiff cannot opt for a jury in an FTCA action, 28 U. S. C. § 2402, as he may in a *Bivens* suit.[10] Petitioners argue that this is an irrelevant difference because juries have been biased against *Bivens* claimants. Reply Brief for Petitioners 7, and n. 6; Brief for Petitioners 30–31, n. 30. Significantly, however, they do not assert that judges trying the claims as FTCA actions would have been more receptive, and

---

[9] Moreover, after *Carey* punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury.

[10] Petitioners argue that the availability of punitive damages or a jury trial under *Bivens* is irrelevant because neither is a *necessary* element of a remedial scheme. But that argument completely misses the mark. The issue is not whether a *Bivens* cause of action or any one of its particular features is essential. Rather the inquiry is whether Congress has created what it views as an *equally* effective remedial scheme. Otherwise the two can exist side by side. Moreover, no one difference need independently render FTCA inadequate. It can fail to be equally effective on the cumulative basis of more than one difference.

they cannot explain why the plaintiff should not retain the choice.

Fourth, an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward. 28 U. S. C. § 1346 (b) (United States liable "in accordance with the law of the place where the act or omission occurred"). Yet it is obvious that the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules. See Part III, *infra*. The question whether respondent's action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution.

Plainly FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated respondent exclusively to the FTCA remedy.

## III

*Bivens* actions are a creation of federal law and, therefore, the question whether respondent's action survived Jones' death is a question of federal law. See *Burks* v. *Lasker*, 441 U. S. 471, 476 (1979). Petitioners, however, would have us fashion a federal rule of survivorship that incorporates the survivorship laws of the forum State, at least where the state law is not inconsistent with federal law. Respondent argues, on the other hand, that only a uniform federal rule of survivorship is compatible with the goal of deterring federal officials from infringing federal constitutional rights in the manner alleged in respondent's complaint. We agree with respondent. Whatever difficulty we might have resolving the question were the federal involvement less clear, we hold that only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged and to protect against repetition of such conduct.

In short, we agree with and adopt the reasoning of the Court of Appeals, 581 F. 2d, at 674–675 (footnote omitted):

> "The essentiality of the survival of civil rights claims for complete vindication of constitutional rights is buttressed by the need for uniform treatment of those claims, at least when they are against federal officials. As this very case illustrates, uniformity cannot be achieved if courts are limited to applicable state law. Here the relevant Indiana statute would not permit survival of the claim, while in *Beard* [v. *Robinson,* 563 F. 2d 331 (CA7 1977),] the Illinois statute permitted survival of the *Bivens* action. The liability of federal agents for violation of constitutional rights should not depend upon where the violation occurred. . . . In sum, we hold that whenever the relevant state survival statute would abate a *Bivens*-type action brought against defendants whose conduct results in death, the federal common law allows survival of the action."

*Robertson* v. *Wegmann,* 436 U. S. 584 (1978), holding that a § 1983 action would abate in accordance with Louisiana survivorship law is not to the contrary. There the plaintiff's death was not caused by the acts of the defendants upon which the suit was based.[11] Moreover, *Robertson* expressly

---

[11] *Robertson* fashioned its holding by reference to 42 U. S. C. § 1988, which requires that § 1983 actions be governed by

"the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of [the] civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States."

Section 1988 does not in terms apply to *Bivens* actions, and there are cogent reasons not to apply it to such actions even by analogy. *Bivens* defendants are federal officials brought into federal court for violating the Federal Constitution. No state interests are implicated by applying purely federal law to them. While it makes some sense to allow aspects of § 1983 litigation to vary according to the laws of the States under whose authority § 1983 defendants work, federal officials have no similar

recognized that to prevent frustrations of the deterrence goals of § 1983 (which in part also underlie *Bivens* actions, see Part II, *supra*) "[a] state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him." 436 U. S., at 592. A federal official contemplating unconstitutional conduct similarly must be prepared to face the prospect of a *Bivens* action. A uniform rule that claims such as respondent's survive the decedent's death is essential if we are not to "frustrate in [an] important way the achievement" of the goals of *Bivens* actions. *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 702 (1966).[12]

*Affirmed.*

MR. JUSTICE POWELL, with whom MR. JUSTICE STEWART joins, concurring in the judgment.

Although I join the judgment, I do not agree with much of the language in the Court's opinion. The Court states the principles governing *Bivens* actions as follows:

"*Bivens* established that the victims of a constitutional

---

claim to be bound only by the law of the State in which they happen to work. *Bivens*, 403 U. S., at 409 (Harlan, J., concurring in judgment). Moreover, these petitioners have the power to transfer prisoners to facilities in any one of several States which may have different rules governing survivorship or other aspects of the case, thereby controlling to some extent the law that would apply to their own wrongdoing. See *Robertson*, 436 U. S., at 592–593, and n. 10. Another aspect of the power to transfer prisoners freely within the federal prison system is that there is no reason to expect that any given prisoner will have any ties to the State in which he is incarcerated, and, therefore, the State will have little interest in having its law applied to that prisoner. Nevertheless, as to other survivorship questions that may arise in *Bivens* actions, it may be that the federal law should choose to incorporate state rules as a matter of convenience. We leave such questions for another day.

[12] Otherwise, an official could know at the time he decided to act whether his intended victim's claim would survive. Cf. *Auto Workers* v. *Hoosier Cardinal Corp.* (whether statute of limitation will matter cannot be known at time of conduct).

violation ... have a right to recover damages. ... Such a cause of action may be defeated . . . in two situations. The first is when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress.' . . . The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective. . . ." *Ante,* at 18–19 (emphasis in original).

The foregoing statement contains dicta that go well beyond the prior holdings of this Court.

## I

We are concerned here with inferring a right of action for damages directly from the Constitution. In *Davis* v. *Passman,* 442 U. S. 228, 242 (1979), the Court said that persons who have "no [other] effective means" of redress "must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights." The *Davis* rule now sets the boundaries of the "principled discretion" that must be brought to bear when a court is asked to infer a private cause of action not specified by the enacting authority. *Id.,* at 252 (POWELL, J., dissenting). But the Court's opinion, read literally, would restrict that discretion dramatically. Today we are told that a court must entertain a *Bivens* suit unless the action is "defeated" in one of two specified ways.

*Bivens* recognized that implied remedies may be unnecessary when Congress has provided "equally effective" alternative remedies. *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388, 397 (1971); see *Davis* v. *Passman, supra,* at 248. The Court now volunteers the view that a defendant cannot defeat a *Bivens* action simply by showing that there are adequate alternative avenues of relief. The defendant also must show that Congress "explicitly declared [its rem-

edy] to be a *substitute* for recovery directly under the Constitution and viewed [it] as equally effective." *Ante,* at 18–19 (emphasis in original). These are unnecessarily rigid conditions. The Court cites no authority and advances no policy reason—indeed no reason at all—for imposing this threshold burden upon the defendant in an implied remedy case.

The Court does implicitly acknowledge that Congress possesses the power to enact adequate alternative remedies that would be exclusive. Yet, today's opinion apparently will permit *Bivens* plaintiffs to ignore entirely adequate remedies if Congress has not clothed them in the prescribed linguistic garb. No purpose is served by affording plaintiffs a choice of remedies in these circumstances. Nor is there any precedent for requiring federal courts to blind themselves to congressional intent expressed in language other than that which we prescribe.

A defendant also may defeat the *Bivens* remedy under today's decision if "special factors" counsel "hesitation." But the Court provides no further guidance on this point. The opinion states simply that no such factors are present in this case. The Court says that petitioners enjoy no "independent status in our constitutional scheme" that would make judicially created remedies inappropriate. *Ante,* at 19. But the implication that official status may be a "special factor" is withdrawn in the sentence that follows, which concludes that qualified immunity affords all the protection necessary to ensure the effective performance of official duties. No other factors relevant to the purported exception are mentioned.

One is left to wonder whether judicial discretion in this area will hereafter be confined to the question of alternative remedies, which is in turn reduced to the single determination that congressional action does or does not comport with the specifications prescribed by this Court. Such a drastic curtailment of discretion would be inconsistent with the Court's longstanding recognition that Congress is ultimately the appropriate body to create federal remedies. See *ante,* at 19–20;

*Bivens* v. *Six Unknown Fed. Narcotics Agents, supra,* at 397. A plaintiff who seeks his remedy directly under the Constitution asks the federal courts to perform an essentially legislative task. In this situation, as Mr. Justice Harlan once said, a court should "take into account [a range of policy considerations] at least as broad as the range of those a legislature would consider with respect to an express statutory authorization of a traditional remedy." *Bivens, supra,* at 407. The Court does not explain why this discretion should be limited in the manner announced today.

The Court's absolute language is all the more puzzling because it comes in a case where the implied remedy is plainly appropriate under any measure of discretion. The Federal Tort Claims Act, on which petitioners rely, simply is not an adequate remedy.[1] And there are reasonably clear indications that Congress did not intend that statute to displace *Bivens* claims. See *ante,* at 19–20. No substantial contrary policy has been identified, and I am aware of none. I therefore agree that a private damages remedy properly is inferred from the Constitution in this case. But I do not agree that *Bivens* plaintiffs have a "right" to such a remedy whenever the defendant fails to show that Congress has "provided an [equally effective] alternative remedy which it explicitly

---

[1] The Federal Tort Claims Act is not a federal remedial scheme at all, but a waiver of sovereign immunity that permits an injured claimant to recover damages against the United States where a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346 (b); see also 28 U. S. C. § 2674. Here, as in *Bivens* itself, a plaintiff denied his constitutional remedy would be remitted to the vagaries of state law. See 403 U. S., at 394–395. The FTCA gives the plaintiff even less than he would receive under state law in many cases, because the statute is hedged with protections for the United States. As the Court points out, the FTCA allows neither jury trial nor punitive damages. *Ante,* at 21–22. And recovery may be barred altogether if the claim arises from a "discretionary function" or "the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U. S. C. § 2680 (a).

declared to be a *substitute*. . . ." In my view, the Court's willingness to infer federal causes of action that cannot be found in the Constitution or in a statute denigrates the doctrine of separation of powers and hardly comports with a rational system of justice. Cf. *Cannon* v. *University of Chicago,* 441 U. S. 677, 730–749 (1979) (POWELL, J., dissenting).[2]

## II

In Part III of its opinion, the Court holds that " 'whenever the relevant state survival statute would abate a *Bivens*-type action brought against defendants whose conduct results in death, the federal common law allows survival of the action.' " *Ante,* at 24, quoting 581 F. 2d 669, 675 (CA7 1978). I agree that the relevant policies require the application of federal common law to allow survival in this case.

It is not "obvious" to me, however, that "the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules" in every case. *Ante,* at 23; see *ante,* at 23–24. On the contrary, federal courts routinely refer to state law to fill the procedural gaps in national remedial schemes. The policy against invoking the federal common law except where necessary to the vitality of a federal claim is codified in 42 U. S. C. § 1988, which directs that state law ordinarily will govern those aspects of § 1983 actions not covered by the "laws of the United States."

The Court's opinion in this case does stop short of mandating uniform rules to govern all aspects of *Bivens* actions. *Ante,* at 24–25, n. 11. But the Court also says that the preference for state law embodied in § 1988 is irrelevant to the selection of rules that will govern actions against federal officers under *Bivens. Ibid.* I see no basis for this view. In

---

[2] I do not suggest that courts enjoy the same degree of freedom to infer causes of action from statutes as from the Constitution. See *Davis* v. *Passman,* 442 U. S. 228, 241–242 (1979). I do believe, however, that the Court today has overstepped the bounds of rational judicial decision-making in both contexts.

*Butz* v. *Economou,* 438 U. S. 478, 498–504, and n. 25 (1978), the Court thought it unseemly that different rules should govern the liability of federal and state officers for similar constitutional wrongs. I would not disturb that understanding today.

MR. CHIEF JUSTICE BURGER, dissenting.

Although I would be prepared to join an opinion giving effect to *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971)—which I thought wrongly decided—I cannot join today's unwarranted expansion of that decision. The Federal Tort Claims Act provides an adequate remedy for prisoners' claims of medical mistreatment. For me, that is the end of the matter.

Under the test enunciated by the Court the adequacy of the Tort Claims Act remedy is an irrelevancy. The sole inquiry called for by the Court's new test is whether "Congress has provided an alternative remedy which *it explicitly declared* to be a *substitute* for recovery directly under the Constitution." *Ante,* at 18–19 (first emphasis added).[1] That test would seem to permit a person whose constitutional rights have been violated by a state officer to bring suit under *Bivens* even though Congress in 42 U. S. C. § 1983 has already fashioned an equally effective remedy. Cf. *Turpin* v. *Mailet,* 591 F. 2d 426 (CA2 1979) (en banc). After all, there is no "explicit congressional declaration," *ante,* at 19, that § 1983 was meant to pre-empt a *Bivens* remedy. Taken to its logical conclusion, the Court's test, coupled with its holding on survivorship, *ante,* at 23, and n. 11, suggests that the plaintiff in *Robertson* v. *Wegmann,* 436 U. S. 584 (1978), might have

---

[1] The Court pays lipservice to the notion that there must be no "special factors counselling hesitation in the absence of affirmative action by Congress." *Ante,* at 19. Its one-sentence discussion of the point, however, plainly shows that it is unlikely to hesitate unless Congress says that it must. See opinion of MR. JUSTICE POWELL, *ante,* at 27.

escaped the impact of that decision by filing a separate *Bivens*-type claim. And the Court's test throws into doubt the decision in *Brown* v. *GSA,* 425 U. S. 820 (1976), where we held that § 717 of the Civil Rights Act of 1964 provides the exclusive remedy for claims of discrimination in federal employment. In enacting § 717 Congress did not say the magic words which the Court now seems to require.[2]

Until today, I had thought that *Bivens* was limited to those circumstances in which a civil rights plaintiff had no other effective remedy. See 403 U. S., at 410 (Harlan, J., concurring in judgment); *Davis* v. *Passman,* 442 U. S. 228, 245, and n. 23 (1979). Now it would seem that implication of a *Bivens*-type remedy is permissible even though a victim of unlawful official action may be fully recompensed under an existing statutory scheme. I have difficulty believing that the Court has thought through, and intends the natural consequences of, this novel test; I cannot escape the conclusion that in future cases the Court will be obliged to retreat from the language of today's decision.[3]

MR. JUSTICE REHNQUIST, dissenting.

The Court today adopts a formalistic procedural approach for inferring private damages remedies from constitutional

---

[2] In his concurrence in *Bivens,* Mr. Justice Harlan emphasized that judicial implication of a constitutional damages remedy was required because the Bill of Rights is aimed at "restraining the Government as an instrument of the popular will." 403 U. S., at 404. See generally J. Ely, Democracy and Distrust 73–104 (1980). Under the Harlan view, it would seem irrelevant whether Congress "meant to pre-empt a *Bivens* remedy." *Ante,* at 19. Rather the sole inquiry in every case—no matter what magic words Congress had said or failed to say—would be whether the alternative remedy gave satisfactory protection to constitutional interests. I note this point only to show how far the Court today strays from the principles underlying *Bivens.*

[3] In response to this dissent, the Court's opinion tells us that it is merely "giv[ing] effect" to what Congress intended. See *ante,* at 19, n. 5. Pre-

provisions that in my view still further highlights the wrong turn this Court took in *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971). Although ordinarily this Court should exercise judicial restraint in attempting to attain a wise accommodation between liberty and order under the Constitution, to dispose of this case as if *Bivens* were rightly decided would in the words of Mr. Justice Frankfurter be to start with an "unreality." *Kovacs* v. *Cooper,* 336 U. S. 77, 89 (1949) (concurring opinion). *Bivens* is a decision "by a closely divided court, unsupported by the confirmation of time," and, as a result of its weak precedential and doctrinal foundation, it cannot be viewed as a check on "the living process of striking a wise balance between liberty and order as new cases come here for adjudication." Cf. 336 U. S., at 89; *B. & W. Taxicab Co.* v. *B. & Y. Taxicab Co.,* 276 U. S. 518, 532–533 (1928) (Holmes, J., dissenting); *Hudgens* v. *NLRB,* 424 U. S. 507 (1976), overruling *Food Employees* v. *Logan Valley Plaza,* 391 U. S. 308 (1968).[1]

The Court concludes that Congress intended a *Bivens* action under the Eighth Amendment to exist concurrently with actions under the Federal Tort Claims Act (FTCA) because Congress did not indicate that it meant the FTCA "to preempt a *Bivens* remedy or to create an equally effective

sumably, this is a reference to the legislative history of the 1974 amendment to the FTCA, in which Congress, according to the Court, "made it crystal clear that . . . FTCA and *Bivens* [were] parallel, complementary causes of action." *Ante,* at 20. But as Mr. Justice Rehnquist observes, the legislative history is far from clear. See *post,* at 33, n. 2. In any event, if the Court is correct in its reading of that history, then it is not really implying a cause of action under the Constitution; rather, it is simply construing a statute. If so, almost all of the Court's opinion is dicta.

[1] As observed by Mr. Justice Brandeis: "This Court, while recognizing the soundness of the rule of *stare decisis* where appropriate, has not hesitated to overrule earlier decisions shown, upon fuller consideration, to be erroneous." *Ashwander* v. *TVA,* 297 U. S. 288, 352–353 (1936) (concurring opinion).

remedy for constitutional violations," *ante,* at 19, nor are there any " 'special factors counselling [judicial] hesitation.' " *Ante,* at 18.[2] The Court's opinion otherwise lacks even an arguably principled basis for deciding in what circumstances an inferred constitutional damages remedy is appropriate and for defining the contours of such a remedy. And its "practical" conclusion is all the more anomalous in that Congress in 1974 amended the FTCA to permit private damages recoveries for intentional torts committed by federal law enforcement officers, thereby enabling persons injured by such officers' violations of their federal constitutional rights in many cases to obtain redress for their injuries.[3]

---

[2] As suggested by MR. JUSTICE POWELL, this analysis is properly viewed as dicta in light of other statements in the Court's opinion. *Ante,* at 26, 28 (opinion concurring in judgment). The Court's opinion entirely disposes of this case by stating that "when Congress amended FTCA in 1974 to create a cause of action against the United States for intentional torts committed by federal law enforcement officers, 28 U. S. C. § 2680 (h), the congressional comments accompanying that amendment *made it crystal clear* that Congress views FTCA and *Bivens* as parallel, complementary causes of action. . . ." *Ante,* at 19–20 (emphasis added). In light of these comments the Court concludes: "In the absence of a contrary expression from Congress, § 2680 (h) thus contemplates that victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States as well as a *Bivens* action against the individual officials alleged to have infringed their constitutional rights." *Ante,* at 20.

Although the Court finds these comments conclusive, in my view they do not purport to suggest that it is proper for courts to infer constitutional damages remedies in areas addressed by the FTCA. Rather, I think it more likely that they reflect Congress' understanding (albeit erroneous) that *Bivens* was a constitutionally required decision. If I am correct, the comments comprise merely an effort on the part of the Senate Committee to avoid what it perceived as a constitutional issue. In any event, the Report seems to be an uncertain basis for concluding that Congress supports the inference of a constitutional damages remedy here or in any other context.

[3] Under the FTCA, if a federal agent's official conduct would render a private person liable in accordance with "the law of the place where the

In my view, it is "an exercise of power that the Constitution does not give us" for this Court to infer a private civil damages remedy from the Eighth Amendment or any other constitutional provision. *Bivens*, 403 U. S., at 428 (Black, J., dissenting). The creation of such remedies is a task that is more appropriately viewed as falling within the legislative sphere of authority. *Ibid.*

## I

Prior to *Bivens*, this Court in *Bell* v. *Hood*, 327 U. S. 678 (1946), held that an individual who brought suit against federal agents for an alleged violation of his constitutional rights had in a strictly procedural sense stated a claim that "arises" under the Constitution and must be entertained by federal courts. *Id.*, at 681–682. The Court did not, however, hold that the Constitution confers a substantive right to damages in this context. Rather, it merely decided that the proper disposition of the suit was a ruling on the merits, not dismissal for want of jurisdiction.[4]

---

act or omission complained of occurred," 28 U. S. C. § 2674, recovery may be had against the United States except as provided in 28 U. S. C. § 2680. See also §§ 2672, 2675. And after *Bivens*, Congress amended the FTCA to allow direct recovery against the Government for certain intentional torts committed by federal officials. § 2680 (h). As the Court notes, however, punitive damages may not be assessed against the United States, § 2674, nor may prejudgment interest be so assessed.

[4] Indeed, on remand the District Court concluded that plaintiff had failed to state a federal claim upon which relief could be granted. *Bell* v. *Hood*, 71 F. Supp. 813 (SD Cal. 1947). In dismissing plaintiff's action the court observed that "[p]laintiffs are unable to point to any constitutional provision or federal statute giving one who has suffered an unreasonable search and seizure or false imprisonment by federal officers any Federal right or cause of action to recover damages from those officers as individuals." *Id.*, at 817. The District Court's opinion provided the foundation for many subsequent decisions reaching the same result. See, e. g., *United States* v. *Faneca*, 332 F. 2d 872, 875 (CA5 1964), cert. denied, 380 U. S. 971 (1965); *Johnston* v. *Earle*, 245 F. 2d 793, 796 (CA9 1957); *Koch* v. *Zuieback*, 194 F. Supp. 651, 656 (SD Cal. 1961), aff'd, 316 F. 2d

Despite the lack of a textual constitutional foundation or any precedential or other historical support, *Bivens* inferred a constitutional damages remedy from the Fourth Amendment, authorizing a party whose constitutional rights had been infringed by a federal officer to recover damages from that officer. *Davis* v. *Passman,* 442 U. S. 228 (1979), subsequently held that such a remedy could also be inferred from the Due Process Clause of the Fifth Amendment. And the Court today further adds to the growing list of Amendments from which a civil damages remedy may be inferred. In so doing, the Court appears to be fashioning for itself a legislative role resembling that once thought to be the domain of Congress, when the latter created a damages remedy for individuals whose constitutional rights had been violated by state officials, 42 U. S. C. § 1983, and separately conferred jurisdiction on federal courts to hear such actions, 28 U. S. C. § 1343. See *Chapman* v. *Houston Welfare Rights Organization,* 441 U. S. 600 (1979).

## A

In adding to the number of Amendments from which causes of actions may be inferred, the Court does not provide any guidance for deciding when a constitutional provision permits an inference that an individual may recover damages and when it does not. For example, the Eighth Amendment, from which the Court infers a cause of action today, also provides that "[e]xcessive bail shall not be required, nor excessive fines imposed. . . ." If a cause of action be inferred for violations of these and other constitutional rights—such as the Seventh Amendment right to a jury trial, the Sixth Amendment right to a speedy trial, and the Fifth Amendment privilege against compulsory self-incrimination—I think there is an ever-increasing likelihood that the attention of

---

1 (CA9 1963); *Garfield* v. *Palmieri,* 193 F. Supp. 582, 586 (EDNY 1960), aff'd *per curiam,* 290 F. 2d 821 (CA2), cert. denied, 368 U. S. 827 (1961).

federal courts will be diverted from needs that in this policy-making context might well be considered to be more pressing. As observed by Mr. Justice Black at the time this Court "inferred" a cause of action under only the Fourth Amendment:

> "My fellow Justices on this Court and our brethren throughout the federal judiciary know only too well the time-consuming task of conscientiously poring over hundreds of thousands of pages of factual allegations of misconduct by police, judicial, and corrections officials. Of course, there are instances of legitimate grievances, but legislators might well desire to devote judicial resources to other problems of a more serious nature." 403 U. S., at 428 (dissenting opinion).

Because the judgments that must be made here involve many "competing policies, goals, and priorities" that are not well suited for evaluation by the Judicial Branch, in my view "[t]he task of evaluating the pros and cons of creating judicial remedies for particular wrongs is a matter for Congress and the legislatures of the States." *Id.,* at 429.

## B

It is clear under Art. III of the Constitution that Congress has broad authority to establish priorities for the allocation of judicial resources in defining the jurisdiction of federal courts. *Ex parte McCardle,* 7 Wall. 506 (1869); *Sheldon* v. *Sill,* 8 How. 441 (1850). Congress thus may prevent the federal courts from deciding cases that it believes would be an unwarranted expenditure of judicial time or would impair the ability of federal courts to dispose of matters that Congress considers to be more important. In reviewing Congress' judgment in this area, "[w]e are not at liberty to inquire into the motives of the legislature. We can only examine into its power under the Constitution. . . ." *Ex parte McCardle,*

*supra,* at 514. As stated by Mr. Justice Chase in *Turner* v. *Bank of North America,* 4 Dall. 8, 10, n. (1799):

> "The notion has frequently been entertained, that the federal Courts derive their judicial power immediately from the constitution; but the political truth is, that the disposal of the judicial power, (except in a few specified instances) belongs to congress. If congress has given the power to this Court, we posess [*sic*] it, not otherwise: and if congress has not given the power to us, or to any other Court, it still remains at the legislative disposal. Besides, congress is not bound, and it would, perhaps, be inexpedient, to enlarge the jurisdiction of federal Courts, to every subject, in every form, which the constitution might warrant."

See also *Sheldon* v. *Sill, supra,* at 449.

While it is analytically correct to view the question of jurisdiction as distinct from that of the appropriate relief to be granted, see *Davis* v. *Passman, supra,* at 239–240, n. 18, congressional authority here may all too easily be undermined when the judiciary, under the guise of exercising its authority to fashion appropriate relief, creates expansive damages remedies that have not been authorized by Congress. Just as there are some tasks that Congress may *not* impose on an Art. III court, *Gordon* v. *United States,* 2 Wall. 561 (1865); *United States* v. *Klein,* 13 Wall. 128 (1872), there are others that an Art. III court may not simply seize for itself without congressional authorization. This concern is initially reflected in the notion that federal courts do not have the authority to act as general courts of common law absent congressional authorization.

In *Wheeldin* v. *Wheeler,* 373 U. S. 647, 651 (1963), the Court observed that "[a]s respects the creation by the federal courts of common-law rights, it is perhaps needless to state that we are not in the free-wheeling days antedating *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 [1938]." *Erie* expressly rejected the

view, previously adopted in *Swift v. Tyson,* 16 Pet. 1 (1842), that federal courts may declare rules of general common law in civil fields. And it has long been established that federal courts lack the authority to create a common law of crimes. *United States* v. *Hudson & Goodwin,* 7 Cranch 32 (1812). *Hudson & Goodwin* rested on the notion that:

> "The powers of the general Government are made up of concessions from the several states—whatever is not expressly given to the former, the latter expressly reserve. The judicial power of the United States is a constituent part of those concessions—that power is to be exercised by Courts organized for the purpose, and brought into existence by an effort of the legislative power of the Union. Of all the Courts which the United States may, under their general powers, constitute, one only, the Supreme Court, possesses jurisdiction derived immediately from the constitution, and of which the legislative power cannot deprive it. All other Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general Government will authorize them to confer." *Id.,* at 33.

Thus, the Court in *Hudson* concluded:

> "It is not necessary to inquire whether the general Government, in any and what extent, possesses the power of conferring on its Courts a jurisdiction in cases similar to the present; it is enough that such jurisdiction has not been conferred by any legislative act, if it does not result to those Courts as a consequence of their creation." *Ibid.*

In my view the authority of federal courts to fashion remedies based on the "common law" of damages for constitutional violations likewise falls within the legislative domain, and does not exist where not conferred by Congress.

The determination by federal courts of the scope of such a remedy involves the creation' of a body of common law analogous to that repudiated in *Erie* and *Hudson & Goodwin*. This determination raises such questions as the types of damages recoverable, the injuries compensable, the degree of intent required for recovery, and the extent to which official immunity will be available as a defense. And the creation of such a remedy by federal courts has the effect of diverting judicial resources from areas that Congress has explicitly provided for by statute. It thereby may impair the ability of federal courts to comply with judicial priorities established by Congress.

Congress' general grant of jurisdiction to federal courts under 28 U. S. C. § 1331 does not permit those courts to create a remedy for the award of damages whenever an individual's constitutional rights have been violated. While § 1331 grants federal courts jurisdiction to hear cases that arise under the Constitution, it makes no provision whatsoever for the award of such damages, nor, as noted above, is there any precedential or other historical support for such a remedy prior to *Bivens*.[5]

---

[5] In his concurrence in *Bivens*, Mr. Justice Harlan relied heavily on decisions of this Court that have inferred private damages remedies from federal statutes. See, *e. g.*, 403 U. S., at 402, 402–403, n. 4, 406, 407, 410–411. Thus, he states: "The *Borak* case [*J. I. Case Co.* v. *Borak*, 377 U. S. 426 (1964)] is an especially clear example of the exercise of federal judicial power to accord damages as an appropriate remedy in the absence of any express statutory authorization of a federal cause of action. . . . The exercise of judicial power involved in *Borak* simply cannot be justified in terms of statutory construction, . . . nor did the *Borak* Court purport to do so. See *Borak, supra*, at 432–434. The notion of 'implying' a remedy, therefore, as applied to cases like *Borak*, can only refer to a process whereby the federal judiciary exercises a choice among *traditionally available* judicial remedies according to reasons related to the substantive social policy embodied in an act of positive law." *Id.*, at 402–403, n. 4.

In light of this Court's recent decisions in *Touche Ross & Co.* v. *Redington*, 442 U. S. 560 (1979), and *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U. S. 11 (1979), it is clear that there is nothing left of the

By contrast, it is obvious that when Congress has wished to authorize federal courts to grant damages relief, it has known how to do so and has done so expressly. For example, in 42 U. S. C. § 1983 Congress explicitly provided for federal courts to award damages against state officials who violate an individual's constitutional rights.[6] With respect to federal officials, however, it has never provided for these types of damages awards.[7] Rather, it chose a different route in 1974 by elimi-

rationale of *Borak*. As observed in both those cases, it is obvious that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross, supra*, at 572; *Transamerica, supra*, at 21. Because the statutes at issue in those cases did not expressly provide for such a remedy and there was no clear evidence of such a congressional intention in their legislative history, the Court, unlike in *Borak*, declined to imply a damages remedy from the statutes' broad language. *Touche Ross* and *Transamerica* thereby undermine the principal foundation of Mr. Justice Harlan's concurring opinion in *Bivens*. Thus, in spite of his cursory comment that for a *Bivens* plaintiff "it is damages or nothing," 403 U. S., at 410, I doubt that Mr. Justice Harlan would today reach the same conclusion that he did in *Bivens* in 1971, especially in light of his statement that "[m]y initial view of this case was that the Court of Appeals was correct in dismissing the complaint, but for reasons stated in this opinion I am now persuaded to the contrary." *Id.*, at 398.

[6] Title 42 U. S. C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[7] Indeed, in discussing the scope of authority conferred on federal courts by § 1983, Senator Thurman stated at the time § 1983 was adopted:

"[This section's] whole effect is to give to the Federal Judiciary that which now does not belong to it—a jurisdiction that may be constitutionally conferred upon it, I grant, but that has never yet been conferred upon it. It authorizes any person who is deprived of any right, privilege, or immunity secured to him by the Constitution of the United States, to bring an action against the wrong-doer in the Federal courts, and that without any limit whatsoever as to the amount in controversy." Cong. Globe,

nating the immunity of federal officials under the FTCA. See n. 2, *supra*.

Congress has also created numerous express causes of actions for damages in other areas. See, *e. g.*, Fair Labor Standards Act, 29 U. S. C. § 216 (b); Civil Rights Act of 1968, 42 U. S. C. § 3612 (c); Federal Employers' Liability Act, 45 U. S. C. §§ 51–60. While the injuries for which such damages have been authorized may seem less important than violations of constitutional rights by federal officials, Congress has nonetheless said that it wants federal courts to hear the former, and has not similarly spoken with respect to the latter.

In my view, absent a clear indication from Congress, federal courts lack the authority to grant damages relief for constitutional violations. Although Congress surely may direct federal courts to grant relief in *Bivens*-type actions, it is enough that it has not done so. As stated by this Court in *Wheeldin v. Wheeler*, 373 U. S., at 652, which declined to create an implied cause of action for federal officials' abuse of their statutory authority to issue subpoenas:

> "Over the years Congress has considered the problem of state civil and criminal actions against federal officials many times. . . . But no general statute making federal officers liable for acts committed 'under color,' but in violation, of their federal authority has been passed. . . . That state law governs the cause of action alleged is shown by the fact that removal is possible in a nondiversity case such as this one only because the interpretation of a federal defense makes the case one 'arising under'

42d Cong., 1st Sess., App. 216–217 (1871), quoted in *Owen v. City of Independence*, 445 U. S. 622, 636–637, n. 17 (1980).

Since Senator Thurman was a staunch opponent of § 1983, the latter part of this statement may be viewed as not unlike the "parade of horribles" frequently marshaled against a pending measure and not the most reliable source of legislative history. But the first part of the statement quite certainly expressed the view entertained by students of federal jurisdiction until very recently.

the Constitution or laws of the United States. . . . [I]t is not for us to fill any *hiatus* Congress has left in this area."

Because Congress also has never provided for a *Bivens*-type damages award, I think the appropriate course is for federal courts to dismiss such actions for failure to state a claim upon which relief can be granted. Congress did not even grant to federal courts a general jurisdiction to entertain cases arising under the Constitution until 1875. Act of Mar. 3, 1875, § 1, 18 Stat. 470. It thus would seem that the most reasonable explanation for Congress' failure explicitly to provide for damages in *Bivens* actions is that Congress intended to leave this responsibility to state courts in the application of their common law, or to put it conversely to preclude federal courts from granting such relief.

The authority of federal courts "to adjust their remedies so. as to grant the necessary relief," *Bell* v. *Hood,* 327 U. S., at 684; *Bivens,* 403 U. S., at 392; *Davis* v. *Passman,* 442 U. S., at 245, does not suggest a contrary conclusion. While federal courts have historically had broad authority to fashion equitable remedies,[8] it does not follow that absent congressional authorization they may also grant damages awards for constitutional violations that would traditionally be regarded as remedies at law. The broad power of federal courts to grant equitable relief for constitutional violations has long been established. As this Court observed in *Swann* v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 1, 15 (1971):

"Once a right and a violation have been shown, the scope

---

[8] Indeed, the principal cases relied on in *Bell, Bivens,* and *Davis* for the principle that federal courts have broad authority to fashion appropriate relief are equitable. *Marbury* v. *Madison,* 1 Cranch 137 (1803), for example, which is referred to in those decisions and relied on in *Bell* for the principle that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief," 327 U. S., at 684, involved equitable relief by way of mandamus or injunction.

of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.

" 'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.' *Hecht Co.* v. *Bowles,* 321 U. S. 321, 329–330 (1944), cited in *Brown* [v. *Board of Education,* 349 U. S. 294, 300 (1955)]."

Thus, for example, in *Ex parte Young,* 209 U. S. 123 (1908), it was held that a federal court may enjoin a state officer from enforcing penalties and remedies provided by an unconstitutional statute. See also, *e. g., Osborn* v. *United States Bank,* 9 Wheat. 738, 838–846, 859 (1824).

No similar authority of federal courts to award damages for violations of constitutional rights had ever been recognized prior to *Bivens.*[9] And no statutory grant by Congress supports the exercise of such authority by federal courts. The Rules of Decision Act, for example, provides that "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U. S. C. § 1652. And the All Writs Act authorizes this Court and lower federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U. S. C. § 1651. Neither these statutes, nor 28 U. S. C. § 1331, authorizes fed-

---

[9] The Just Compensation Clause of the Fifth Amendment is not an exception here because the express language of that Clause requires that "compensation" be paid for any governmental taking.

eral courts to create a body of common-law damages remedies for constitutional violations or any other legal wrong. And as previously discussed, federal courts do not have the authority to act as general courts of common law absent authorization by Congress.

In light of the absence of any congressional authorization or historical support, I do not think the equitable authority of federal courts to grant "the necessary relief" provides a foundation for inferring a body of common-law damages remedies from various constitutional provisions. I believe my conclusion here is further supported by an examination of the difficulties that arise in attempting to delimit the contours of the damages remedy that the Court has held should be available when an individual's constitutional rights are violated.

## II

The Court concludes, as noted above, that respondent may recover damages as a result of an inferred remedy under the Eighth Amendment because "nothing in the Federal Tort Claims Act (FTCA) or its legislative history . . . show[s] that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations," *ante,* at 19, nor are there any " 'special factors counselling [judicial] hesitation.' " *Ante,* at 18. After observing that Congress did not explicitly state in the FTCA or its legislative history that the FTCA was intended to provide such a remedy, the Court points to "[f]our additional factors" that suggest a "*Bivens* remedy is more effective than the FTCA remedy" in attempting to ascertain congressional intention here. *Ante,* at 20. The first is that the *Bivens* remedy is recoverable against individuals whereas the FTCA remedy is against the United States, and thus the *Bivens* remedy more effectively serves the deterrent purpose articulated in *Bivens.*

The Court not only fails to explain why the *Bivens* remedy is effective in the promotion of deterrence, but also does not provide any reason for believing that other sanctions on fed-

eral employees—such as a threat of deductions in pay, reprimand, suspension, or firing—will be ineffective in promoting the desired level of deterrence, or that Congress did not consider the marginal increase in deterrence here to be outweighed by other considerations. See, *e. g.*, Bell, Proposed Amendments to the Federal Tort Claims Act, 16 Harv. J. on Leg. 1, 13 (1979). And while it may be generally true that the extent to which a sanction is imposed directly on a wrongdoer will have an impact on the effectiveness of a deterrent remedy,[10] there are also a number of other factors that must be taken into account—such as the amount of damages necessary to offset the benefits of the objectionable conduct, the risk that the wrongdoer might escape liability, the clarity with which the objectionable conduct is defined, and the perceptions of the individual who is a potential wrongdoer. In a *Bivens* action, however, there is no relationship whatsoever between the damages awarded and the benefits from infringing the individual's rights because the damages award focuses

---

[10] It must also be remembered that along with the greater deterrent effect resulting from liability imposed directly on the governmental wrongdoer, there is also strong potential for distortion of governmental decisionmaking as a result of the threat of liability. Thus, MR. JUSTICE BRENNAN in his opinion for the Court in *Owen* v. *City of Independence*, 445 U. S., at 655–656, states:

"At the heart of [the] justification for a qualified immunity for the individual official is the concern that the threat of *personal* monetary liability will introduce an unwarranted and unconscionable consideration into the decisionmaking process, thus paralyzing the governing official's decisiveness and distorting his judgment on matters of public policy. The inhibiting effect is significantly reduced, if not eliminated, however, when the threat of personal liability is removed."

The fact that Congress in the FTCA has provided for a remedy against the United States, rather than against federal officials, thus does not suggest that Congress views a *Bivens* remedy as desirable because of its deterrent effect. Rather, it is at least equally, if not more, plausible that Congress viewed the approach in the FTCA to be preferable because of the potential impact on governmental decisionmaking that might result from the threat of personal liability.

solely on the loss to the plaintiff. The damages in such an action do not take into account the risk that the wrongdoer will escape liability altogether. In addition, it is often not clear what conduct violates the Constitution, see, *e. g., Owen* v. *City of Independence,* 445 U. S. 622 (1980); [11] *California* v. *Minjares,* 443 U. S. 916, 917–919 (1979) (REHNQUIST, J., dissenting from denial of stay). In many cases the uncertainty as to what constitutes a constitutional violation will impair the deterrent impact of a *Bivens* remedy.[12] Finally, the perceptions of the potential wrongdoer as to the above considerations may also detract from the deterrent effect of a *Bivens* action. The Court makes no attempt to assess these factors or to examine them in relation to an FTCA action. In my view, its assertion that the *Bivens* remedy is a more effective deterrent than the FTCA remedy, and that this is a reason for concluding that Congress intended *Bivens* actions to exist concurrently with FTCA actions, remains an unsupported assertion.[13]

---

[11] For example, in *Owen,* which relies partially on a deterrence rationale, 445 U. S., at 651–652, the conduct causing the alleged injury to plaintiff had not been held to be a constitutional violation at the time it was committed. It is thus readily apparent that the imposition of damages in *Owen* had no deterrent impact whatsoever.

[12] Even where the legal principles are not in flux, the constitutional standard may be sufficiently general that it is difficult to predict in advance whether a particular set of facts amounts to a constitutional violation. For example, as interpreted by this Court, the Due Process Clause of the Fourteenth Amendment may be violated by conduct that offends traditional notions of "fair play and substantial justice," *Shaffer* v. *Heitner,* 433 U. S. 186, 207, 212 (1977), or that "shocks the conscience," *Rochin* v. *California,* 342 U. S. 165, 172 (1952).

[13] Although the Court states that a *Bivens* remedy is recoverable against individuals, it does not state that the damages paid in a *Bivens* action actually come out of the federal employee's pocket. And even if they did, as explained above, it is not clear that the award would promote deterrence, or that any marginal increase in deterrence would outweigh other considerations that counsel against judicial creation of this type of remedy.

In addition, there are important policy considerations at stake here that Congress may decide outweigh the interest in deterrence promoted by personal liability of federal officials. Indeed, the fear of personal liability may "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire* v. *Biddle,* 177 F. 2d 579, 581 (CA2 1949) (L. Hand). And, as one commentator has observed: "Despite the small odds an employee will actually be held liable in a civil suit, morale within the federal services has suffered as employees have been dragged through drawn-out lawsuits, many of which are frivolous." Bell, 16 Harv. J. on Leg., *supra,* at 6.

The Court next argues that Congress did not intend the FTCA to displace the *Bivens* remedy because it did not provide for punitive damages in the FTCA. As the Court observes, we have not "expressly address[ed] and decid[ed] the question" whether punitive damages may be awarded in a *Bivens* suit. *Ante,* at 21–22. And despite the Court's assertion to the contrary, we have also not done so with respect to § 1983 actions. In *Carey* v. *Piphus,* 435 U. S. 247, 257, n. 11 (1978), this Court explicitly stated that "we imply no approval or disapproval of any of [the] cases" that have awarded punitive damages in § 1983 actions. Because this Court has never reached the question whether punitive damages may be awarded in either a *Bivens* or § 1983 action, I think serious doubts arise as to the Court's claim that an FTCA action is not as effective as a *Bivens* action because the FTCA does not permit punitive damages awards. Indeed, this Court in *Carey* also stated that "[t]o the extent that Congress intended that [damages] awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." 435 U. S., at 256–257.

Even if punitive damages were appropriate in a *Bivens* action, such damages are typically determined by reference

to factors such as the character of the wrong, the amount necessary to "punish" the defendant, etc., and the jury has a great deal of discretion in deciding both whether such damages should be awarded and the amount of the punitive award. See, *e. g.,* C. McCormick, Law of Damages § 85 (1935). The determination whether this or some other remedy—such as a fixed fine, a threat of being reprimanded, suspended, or fired, or simply compensatory damages—provides the desired level of deterrence is one for Congress. This Court should defer to Congress even when Congress has not explicitly stated that its remedy is a substitute for a *Bivens* action.

The third factor relied on by the Court to support its conclusion that Congress did not intend the FTCA to serve as a substitute for a *Bivens* action is that a plaintiff cannot opt for a jury in a FTCA action while he can in a *Bivens* suit. The Court, however, offers no reason why a judge is preferable to a jury, or vice versa, in this context. Rather, the Court merely notes that petitioners cannot explain why plaintiffs should not retain the choice between a judge and jury. *Ante,* at 23, and n. 9. I do not think the fact that Congress failed to specify that the FTCA was a substitute for a *Bivens* action supports the conclusion that Congress viewed the plaintiff's ability to choose between a judge and a jury as a reason for retaining a *Bivens* action in addition to an action under the FTCA.

Finally, I do not think it is obvious, as the Court states, that liability of federal officials for violations of constitutional rights should be governed by uniform rules absent an explicit statement by Congress indicating a contrary intention. The importance of federalism in our constitutional system has been recognized both by this Court, see, *e. g., Younger* v. *Harris,* 401 U. S. 37 (1971), and by Congress, see, *e. g.,* 42 U. S. C. § 1988, and in accommodating the values of federalism with other constitutional principles and congressional statutes, this Court has often deferred to state rules. See, *e. g., Rob-*

*ertson* v. *Wegmann,* 436 U. S. 584 (1978); *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454 (1975). As observed by Mr. Justice Powell, "federal courts routinely refer to state law to fill the procedural gaps in national remedial schemes." *Ante,* at 29 (opinion concurring in judgment).[14] Indeed, the Rules of Decision Act would seem ordinarily to require it. 28 U. S. C. § 1652.

Once we get past the level of a high-school civics text, it is simply not self-evident to merely assert that here we have a federal cause of action for violations of federal rights by federal officials, and thus the question whether reference to state procedure is appropriate "admits of only a negative answer in the absence of a contrary congressional resolution." *Ante,* at 23. The Court articulates no solid basis for concluding that there is any interest in uniformity that should generally be viewed as significant. Although the Court identifies "deterrence" as an objective of a *Bivens* action, a § 1983 action, which is also a creation of federal law, has been recognized by this Court as having a similar objective in the promotion of deterrence. See, *e. g., Carey* v. *Piphus, supra,* at 257; *Robertson* v. *Wegmann,* 436 U. S., at 592; *Imbler* v. *Pachtman, supra,* at 442 (White, J., concurring in judgment).[15]

---

[14] Like a *Bivens* action, a § 1983 action is a creation of federal law and an exclusively federal right. Congress in § 1988 nonetheless "quite clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule of decision for actions brought under § 1983. *Robertson* v. *Wegmann,* 436 U. S., at 593. See also n. 10, *supra.* Although a § 1983 action is against state officers and a *Bivens* action is against federal officers, it does not follow that there is an obvious interest in application of uniform rules. Indeed, the controlling authority is to the contrary. See, *e. g., Johnson* v. *Railway Express Agency, Inc.,* 421 U. S., at 462, and cases cited therein; *infra,* at 50.

[15] *Robertson* reveals that, however one views the appropriateness of the Court's refusal to apply Indiana survivorship law in this case, the objective of deterrence does not mean that application of state law is inappropriate for filling procedural gaps in *Bivens* actions on the ground that the state rule will result in an unfavorable outcome for the plaintiff.

And with respect to such actions state procedural rules are generally controlling, see, *e. g., Robertson* v. *Wegmann, supra.* As observed in *Robertson, supra,* at 593:

> "It is true that § 1983 provides 'a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.' *Mitchum* v. *Foster,* [407 U. S. 225,] 239. That a federal remedy should be available, however, does not mean that a § 1983 plaintiff (or his representatives) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant." [16]

I think the congressional determination to defer to state procedural rules in the § 1983 context indicates the weak foundation upon which the Court's analysis here rests.[17]

---

[16] The Court states as one justification for its refusal to apply Indiana survivorship law that here the suit is against federal officials whereas § 1983 actions, which are subject to the requirements of § 1988, are against state officers. *Ante,* at 24–25, n. 11. Section 1988, however, applies not only to claims against state officers under § 1983, but also to suits under §§ 1981, 1982, and 1985, which do not require state action. And the Rules of Decision Act applies by its terms to federal causes of action, whether or not against federal officials. Thus, the asserted interest in uniform rules of procedure in federal actions against federal officials, absent more, is unpersuasive and not justified in light of established practice.

[17] Any alleged inconsistency with the policies of federal law here is highly speculative at best. In order to find even a marginal influence on behavior as a result of Indiana's survivorship provisions, one would have to assume not only that federal officials have both the desire and ability to select as victims only those persons who would not be survived by any

In my view, the fact that Congress has created a tort remedy against federal officials at all, as it has done here under the FTCA, is dispositive. The policy questions at issue in the creation of any tort remedies, constitutional or otherwise, involve judgments as to diverse factors that are more appropriately made by the legislature than by this Court in an attempt to fashion a constitutional common law. This Court stated in *TVA* v. *Hill,* 437 U. S. 153, 194 (1978):

> "Our system of government is, after all, a tripartite one, with each branch having certain defined functions delegated to it by the Constitution. While '[i]t is emphatically the province and duty of the judicial department to say what the law is,' *Marbury* v. *Madison,* 1 Cranch 137, 177 (1803), it is equally—and emphatically—the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation. Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the Executive to administer the laws and for the courts to enforce them when enforcement is sought."

Here Congress has provided no indication that it believes sound policy favors damages awards against federal officials for violations of constitutional rights.

### III

I think the Court acknowledges the legislative nature of the determinations involved here when it states that such a

---

close relatives, but also that (1) they are aware that if the victim dies survivorship law will preclude recovery, (2) they would intentionally kill the individual or permit him to die, rather than violate his constitutional rights to a lesser extent, in order to avoid liability under *Bivens,* and (3) a *Bivens* remedy will have a deterrent impact in these circumstances beyond that of ordinary criminal sanctions. In addition, one must include in the evaluation a consideration of competing policies that Congress may wish to promote.

remedy may be defeated when "Congress has indicated that it intends the statutory remedy to replace, rather than to complement, the *Bivens* remedy." *Ante,* at 19, n. 5. Here Congress did not do so because in the Court's words: "In the absence of a contrary expression from Congress, § 2680 (h) . . . contemplates that victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States as well as a *Bivens* action against the individual officials alleged to have infringed their constitutional rights." *Ante,* at 20. But under the Court's rationale if Congress had made clear that it intended the FTCA to displace judicially inferred remedies under the Constitution, this Court must defer to that legislative judgment.[18] This principle was also recognized in *Bivens,* wherein the Court noted that Congress had given no indication that it viewed any other remedy to be as effective as the damages remedy inferred by the Court from the Fourth Amendment. 403 U. S., at 397. See also *Davis* v. *Passman,* 442 U. S., at 245, 246–247; *Butz* v. *Economou,* 438 U. S. 478, 504 (1978).

I agree with the Court that Congress is free to devise whatever remedy it sees fit to redress violations of constitutional rights sued upon in Art. III courts, and to have that

---

[18] Thus, although it does not appear that Congress explicitly stated that § 1983 is intended as the exclusive remedy for violations of constitutional rights by state officials, it would clearly be invasion of the legislative province for this Court to fashion a constitutional damages remedy against state officials that would exist concurrently with § 1983. As this Court observed with respect to its creation of a *Bivens* action, "[t]he presence or absence of congressional authorization for suits against federal officials is, of course, relevant to the question whether to infer a right of action for damages for a particular violation of the Constitution." *Butz* v. *Economou,* 438 U. S. 478, 503 (1978). Here Congress' action in adopting 42 U. S. C. § 1983 demonstrates that Congress has exercised its judgment in balancing the relevant policies and in determining the nature and scope of the damages remedy against state officials who violate an individual's federal constitutional rights. In light of traditional notions of separation of powers, its judgment is conclusive.

remedy altogether displace any private civil damages remedies that this Court may devise. I disagree, however, that, unless "special factors" counsel hesitation, Congress must make some affirmative showing that it intends its action to provide such redress before this Court will deem Congress' action to be an adequate substitute for an inferred remedy.[19] The requirement of such congressional action is a formal procedural device that not only serves little useful purpose, but also subverts the policymaking authority vested by the Constitution in the Legislative Branch. Its application in this case, through the Court's attempt to ascertain congressional intention by examining whether the FTCA or a *Bivens* action is "more effective," in my view demonstrates that the creation of constitutional damages remedies involves policy considerations that are more appropriately made by the Legislative rather than the Judicial Branch of our Government.

## IV

I think the Court's formalistic procedural approach to this problem is flawed for one additional reason. As noted above, the approach adopted by the Court in *Bivens* and reaffirmed today is one that permits Congress to displace this Court in fashioning a constitutional common law of its choosing merely by indicating that it intends to do so. *Ante,* at 19, n. 5. Otherwise, unless special factors counsel "hesitation," it will be presumed under the Court's analysis that Congress intended any remedy it creates to be enforced simultaneously by federal courts with a *Bivens* action. The Court provides no justification for this canon of divining legislative intention. Presumably when Congress creates and defines the limits of a cause of action, it has taken into account competing considerations and struck what it considers to be an appropriate balance among them. In my view it is wholly at odds with traditional

---

[19] As MR. JUSTICE POWELL states, the Court did not go this far even in *Bivens*. *Ante,* at 26–27 (opinion concurring in judgment).

principles for interpretation of legislative intention and with the constitutional notion of separation of powers to conclude that because Congress failed to indicate that it did not intend the cause of action and its limitations to be defined otherwise, it intended for this Court to exercise free rein in fashioning additional rules for recovery of damages under the guise of an inferred constitutional damages action.

For the foregoing reasons I dissent, and would reverse the judgment.