DIANA GRIBBON MOTZ, Circuit Judge,
concurring in the judgment:
The majority’s holding that private correctional employees are not governmental actors ignores or misreads controlling Supreme Court case law. Those cases, as well as numerous cases from other federal courts, establish that individual private correctional providers are government actors subject to liability as such. Accordingly, I cannot join the majority opinion. However, because Ricky Holly possesses an alternative remedy for his alleged injuries, no action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), lies in this case. For that reason alone, I concur in the judgment.
I.
The strictures of the Constitution generally apply only to public action. However, when private individuals take actions attributable to the government, they are liable, as government actors, for damages resulting from their constitutional violations. See, e.g., Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (“Conduct that is formally ‘private’ may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action.”). In this case, the government has delegated its authority to the privately employed defendants, empowering them to incarcerate, to confine, to discipline, to feed, and to provide medical and other care to inmates who are imprisoned by order of the federal government. The defendants are acting as agents of the government; their actions are thus clearly attributable to the federal government, and a prisoner must be able to seek redress from the defendants if they cause him constitutional injury. Therefore, if Holly had no alternative remedy for the alleged deprivation of his constitutional rights, it seems to me that he could certainly bring a Bivens action against these defendants.
As the majority itself recognizes — notwithstanding its response to this concurrence, ante at 294-95 n. 4, which I address post at 301-03 — the determination of whether the defendants are .governmental actors for Bivens purposes rests on the “state action” principles developed by the Supreme Court in cases involving liability of private persons under 42 U.S.C. § 1983 (2000). See ante at 290-91, 292-93 (citing and relying on numerous § 1983 state action cases). But what the majority fails to recognize is that under this case law, the defendants here — individual private prison guards — are indeed governmental actors. In these cases, the Supreme Court has held that, in general, when a private person acts under authority given to him by the government, or is fulfilling an obligation or responsibility that is traditionally a public function, his conduct will be imputed to the government and thus considered government action for purposes of imposing liability. See, e.g., Edmonson v. *298 Leesville Concrete Co., Inc., 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Rendell-Baker v. Kohn, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (all cited by the majority). Moreover, applying these principles, the Court has concluded that private correctional employees are governmental actors.
First, almost thirty years ago, the Court recognized an obligation on the part of the government’s correctional employees “to provide medical care for those whom it is punishing by incarceration.” Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); see also Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (holding that the federal government has the same obligation). The Estelle Court explained that necessity compelled this holding: “[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.” Id. Accordingly, the Court held that an inmate could bring a § 1983 action for Eighth Amendment violations against various state correctional employees, including a prison physician, for failing to provide adequate medical care. Then, almost twenty years ago, in West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the Court extended that obligation to private correctional employees under contract with the state, holding that a prisoner could bring a § 1983 action against a private doctor rendering medical care to inmates because the acts of the doctor were attributable to the government.
Tellingly, in West a majority of the Fourth Circuit had refused to so hold, reasoning that the private doctor was not a governmental actor. West v. Atkins, 815 F.2d 993, 994 (4th Cir.1987) (en banc). After noting that every other circuit to consider the question had implicitly or explicitly rejected the Fourth Circuit’s view, the Supreme Court unanimously reversed. West, 487 U.S. at 47-48 & n. 7, 54, 108 S.Ct. 2250. Moreover, the Court held that the approach of the en banc Fourth Circuit majority misread and misunderstood prior Supreme Court precedent in its failure to recognize that a private doctor, “authorized and obliged” by the government to treat prison inmates, is a government actor subject to liability as such. Id. at 55, 108 S.Ct. 2250.
The mere fact that the government did not directly employ the private doctor in West did not preclude him from being a governmental actor. The Supreme Court explained that government action derives from the individual’s “function within the state system, not the precise terms of his employment.” Id. Under this standard, the Court found no relevant distinction between the publicly employed doctors in Estelle and the private doctor in West. Id. As with its public employees, the government was liable for the private doctor’s Eighth Amendment violations because the government had invested the doctor with power “to provide medical services to state prison inmates.” Id. at 54, 108 S.Ct. 2250. If the doctor misused that power, “the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State’s exercise of its right to punish [the inmate] by incarceration and to deny him a venue independent of the State to obtain needed medical care.” Id. at 55, 108 S.Ct. 2250. Because the private doctor was “fully vested with state authority to fulfill essential aspects” of his duties, the doctor must “be considered to be a state actor.” Id. at 57, 108 S.Ct. 2250.
So it is in this case. The defendants have been “fully vested” with the governmental authority to “fulfill essential as- *299 peets” of their duties, e.g., confinement and care of prisoners incarcerated by the government. The defendants perform a public function delegated to them by the federal government, and they assume the necessary obligations inherent in that function. The assumption and performance of these critical governmental duties and the role these individuals play in the penal system surely put more at stake here than the mere “contractual relationship” dismissed by the majority. See ante at 290-91. Rather, just as in West, any alleged constitutional harm suffered by Ricky Holly was caused “in the sense relevant for [governmentj-action inquiry” by the government’s power to punish and incarcerate him, depriving him of alternative means of care independent of the government. West, 487 U.S. at 55, 108 S.Ct. 2250. And, as in West, the fact that the defendants are not direct employees of the government does not in any way alter their fundamental obligations, for it is their “function within the [federal] system, not the precise terms of [their] employment” that makes their conduct governmental action. Id. Accordingly, again as in West, the defendants are “possessed of [governmental] authority” and so must be considered governmental actors. Id. at 56 n. 15, 108 S.Ct. 2250.
The Supreme Court has never retreated from its holding in West. Indeed, only four years ago, in its most recent Bivens case, the Court specifically acknowledged that individual private correctional providers (not just private prison doctors) are government actors. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). In Malesko, the Court did not reach the precise question of whether a Bivens action would lie against individual “private correctional providers,” but it did expressly recognize that such individuals are government actors whose conduct is attributable to the government; thus, they would, in the appropriate case, be subject to suit on that basis. Id. at 72 n. 5, 122 S.Ct. 515 (noting that prisoners “enjoy a right of action against private correctional providers under 42 U.S.C. § 1983”).
The majority ignores Malesko’s express acknowledgment that individual private correctional providers are government actors and unconvincingly dismisses the strikingly similar West precedent as “very different.” Ante at 294.[1] Instead of following Malesko and West, binding Supreme Court precedent as to the liability of private correctional employees as government actors, the majority relies on a case involving a question not presented here — whether private persons sued as government actors under § 1983 enjoy qualified immunity for their actions. See Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).
The majority posits that Richardson (which, of course, predates Malesko) “precludes argument that the operation of a prison is a traditionally exclusive state function” and that therefore, private correctional providers are not government actors for purposes of imposing liability. Ante at 293. But Richardson does nothing of the sort; the case deals only with a *300 private person’s immunity from liability. Richardson, 521 U.S. at 401, 413, 117 S.Ct. 2100. That question, as the Supreme Court has acknowledged, does not control the separate question of whether a private party can be liable as a governmental actor. See Wyatt v. Cole, 504 U.S. 158, 168-69, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (holding certain “private defendants” not entitled to the qualified immunity afforded government officials but remanding for determination as to whether they are liable as government actors); see also, United States v. Thomas, 240 F.3d 445, 448-49 (5th Cir.2001) (holding employee of private detention center a “public official” for purposes of the Federal Bribery Statute and distinguishing Richardson on the ground that “policy considerations supporting private corrections officers’ not being entitled to qualified immunity are quite different from those concerning whether they are ‘public officials’ for purposes of the federal bribery statute”).
The fact is that, at least in this country, incarceration of those charged with committing crimes is, and always has been, the province and prerogative of the government. That historically immunity has not been afforded those performing some correctional duties demonstrates only that the government has delegated some of its correctional functions to private actors. Richardson, 521 U.S. at 405-07, 117 S.Ct. 2100. These correctional functions have not been “exclusively public,” id., only in the sense that private individuals have long been empowered by the government to fulfill the tasks involved in the fundamentally governmental function of incarceration of criminals. But this government delegation of some duties to private persons or entities does not change the public character of the underlying function performed by “private correctional providers,” as the Court recognized in Malesko, 534 U.S. at 72 n. 5, 122 S.Ct. 515.
Indeed, in Richardson itself, the Court recognized that its historical discussion did not apply to questions of governmental action. After concluding that the defendants lacked qualified immunity, the Richardson Court remanded for a determination of whether the defendants were, in fact, liable as governmental actors for their operation, confinement, and care of inmates. Richardson, 521 U.S. at 413, 117 S.Ct. 2100. If the Court’s historical analysis of “public function” for immunity purposes were meant to control the “public function” determination for liability purposes — as the majority holds today — -the Court would not have needed to remand the case at all.
Certainly, incarcerating and caring for those confined by the government for criminal conduct is just as much a public function as maintaining a park, Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), running an election, Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), or operating a company town, Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). All of these functions “traditionally serve[ ] the community” no matter who performs them, and surely the “predominant character and purpose” of a prison is as governmental as these other functions. Evans, 382 U.S. at 302, 86 S.Ct. 486. Thus, those performing the fundamental governmental function at issue here, like those in Evans, Terry, and Marsh, are governmental actors whether publicly or privately employed and are subject to liability as such.[2]
*301 Numerous courts have so held, both before and after Richardson. See, e.g., Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir.2003) (holding that employees of a private correctional facility perform a “fundamentally government function” — “confinement of wrongdoers”— and so are government actors for § 1983 purposes); Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996) (same); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir.1985) (explaining that employees of private health corporation are state actors when performing the public function of providing required medical services to inmates); Sarro v. Cornell Corr., Inc., 248 F.Supp.2d 52, 60-62 (D.R.I.2003) (holding that employees of a private operator of a prison facility perform a government function traditionally reserved to the government and are government actors for Bivens purposes); Palm v. Marr, 174 F.Supp.2d 484, 487-88 (N.D.Tex.2001) (holding that employees of a private prison facility exercise powers that are traditionally the exclusive prerogative of the state and so are governmental actors for § 1983 purposes); Giron v. Corr. Corp. of Am., 14 F.Supp.2d 1245, 1249 (D.N.M.1998) (holding that “[t]he function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state”); Kesler v. King, 29 F.Supp.2d 356, 370-71 (S.D.Tex.1998) (concluding that “the incarceration of inmates ... falls within the exclusive responsibility of the state” and so holding that the warden of a private correctional facility is a governmental actor subject to § 1983 liability); Nelson v. Prison Health Servs., Inc., 991 F.Supp. 1452, 1463 (M.D.Fla.1997) (explaining that nurses employed by private company providing medical services for a jail are considered state actors for § 1983 liability).
In holding to the contrary, the majority disregards all of this authority and creates a circuit split. Indeed, like the en banc majority in West, the majority’s view stands alone among the federal circuits addressing this point. Cf. Rosborough, 350 F.3d at 461; Street, 102 F.3d at 814; Ancata, 769 F.2d at 703.[3] Even more disturbingly, the majority, again like the en banc majority in West, misreads and misunderstands Supreme Court precedent. Pursuant to that precedent, the defendants here were clearly exercising authority fairly attributable to the government and so are government actors for liability purposes.
The only substantive response the majority offers to this concurrence is an argument that because § 1983 actions are stab- *302 utory and Bivens actions judicially created, I err in relying on § 1983 precedent in this Bivens case. See ante at 294-95 n. 4.[4] This argument utterly fails.
While different in origin, § 1983 and Bivens actions are identical in the respect critical here — both involve imposition of liability on governmental actors for constitutional violations. In view of the scarcity of cases discussing governmental actor status under federal law, § 1983 cases determining the liability of private persons as state actors provide valuable guidance when determining the liability of private persons as federal actors. See e.g., Brown v. Philip Morris Inc., 250 F.3d 789, 801 (3rd Cir.2001) (explaining that a Bivens action is “the federal equivalent of the § 1983 cause of action,” and holding in a Bivens case that “[i]n order to determine whether the conduct of a private party should be attributable to the federal government, courts apply the ‘state action’ analysis set forth by the Supreme Court” in § 1983 cases). See also, Edmonson, 500 U.S. at 621-22, 111 S.Ct. 2077 (explaining, in a case involving a federal actor, that “certain principles of general application” should be applied to determine “whether a particular course of conduct is governmental in character”). In fact, despite its lengthy footnote criticizing me, earlier in its opinion the majority itself cites § 1983 “state action” cases as providing the principles to be followed in determining whether the private defendants here are government actors. See ante at 290-91, 292-93.
Indeed, the majority builds its entire holding that the defendants are not government actors on a § 1983 case. In doing so, however, the majority eschews the relevant § 1983 precedent it initially cites, and instead commits the very sin it accuses me of — “intermingling” cases from different “worlds.” Id. at 294-95 n. 4. For the majority can conclude that the defendants are not government actors only by holding that Richardson, a § 1983 qualified immunity case, “is controlling” on the very different question presented here— whether a private person is liable as a governmental actor. Id. That the majority holds a defendant’s entitlement to qualified immunity “controls” his liability — when the Supreme Court expressly refused to do so both in Wyatt and Richardson itself—speaks volumes.
Thus, in its attempt to counter my concurrence, the majority is forced into the untenable position of disavowing clearly relevant precedent on which it itself otherwise relies, and then finding “controlling” an inapposite case dealing with a wholly different issue. The majority must steadfastly rely on an immunity case and resolutely refuse to acknowledge the applicability of the cases dealing with the liability of government actors because to do otherwise makes the conclusion I have reached — that the defendants are indeed government actors — inescapable.
II.
Although Supreme Court precedent thus dictates that the defendants here are gov *303 ernmental actors, the Court has indicated that a court should not imply a Bivens cause of action against government actors if the plaintiff possesses an alternative remedy.[5] Because Holly possesses an alternative remedy against the defendants under state tort law, I must concur in the judgment.
In Peoples v. CCA Detention Ctrs., 422 F.3d 1090, 1109-1111 (10th Cir.2005) (Ebel, J., concurring and dissenting), Judge Ebel forcefully set forth a contrary view — that to be sufficient to preclude a Bivens action, the alternative remedy “must be a constitutional cause of action,” and so state tort law is inadequate. Some of the language and reasoning in Bivens, 403 U.S. at 391-92, 91 S.Ct. 1999, and Carlson, 446 U.S. at 24, 100 S.Ct. 1468, support this position.
In the years since Bivens and Carlson, however, the Court has retreated from this view, instead limiting a Bivens cause of action to cases in which no alternative remedy — constitutional or otherwise — exists. See Malesko, 534 U.S. at 69, 122 S.Ct. 515 (noting that the Court has “rejected the claim that a Bivens remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court”); Schweiker v. Chilicky, 487 U.S. 412, 421, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (noting that “[t]he absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation”); Bush v. Lucas, 462 U.S. 367, 386-88, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to find a Bivens cause of action because meaningful, albeit incomplete, relief was available through the administrative system created by Congress).
Because Holly has an alternative remedy under North Carolina tort law, this more recent Supreme Court precedent requires that we reverse the district court’s order refusing to dismiss this action.
I therefore concur — but only in the judgment.

. This assertedly critical difference is that while in West the government had a contract with the private doctor who cared for the prisoners, here the government contracts with a private entity which in turn employs those who care for prisoners. Ante at 294. The majority thus suggests that by adding an additional layer, the government can contract away its constitutional duties. West itself expressly rejects this disturbing contention, instructing that "[c]ontracting out” care “does not relieve” the government of its "constitutional duty” to provide adequate care or "deprive inmates of the means to vindicate their Eighth Amendment rights.” West, 487 U.S. at 55-56, 108 S.Ct. 2250 (emphasis added).

. It is worth noting that, despite the majority’s ”reluctan[ce] to create an anomaly whereby private defendants face greater constitutional liability than public officials,” see ante at 294, the majority creates its own anomaly. That is, the majority holds that *301 even though an individual guard employed by a private correctional facility under contract with the state government is a governmental actor liable for his constitutional wrongs, an individual guard employed by a private correctional facility under contract with the federal government somehow is not. Thus the majority places inmates in private correctional institutions under contract with a state government "in a more favorable position than their counterparts” in private correctional facilities under contract with the federal government, id.; the former could bring a § 1983 action in the proper case to recover damages for constitutional wrongs, while the latter could never bring the analogous federal action.

. Notably, the only other circuit to consider the precise question presented here — whether an inmate can bring a Bivens action against private correctional employees — does not share the majority’s view on this point. See Peoples v. CCA Detention Ctrs., 422 F.3d 1090 (10th Cir.2005). The Tenth Circuit, unlike the majority here, did not hold that the Bivens action failed because the private defendants were not governmental actors. Rather, the Tenth Circuit (adopting the same approach I do here) refused to imply a Bivens action solely because it concluded that in the case before it, an alternative remedy precluded the Bivens action. Id. at 1108.

. The majority claims that this improper "intermingling” of § 1983 and Bivens cases leads me to make allegedly "contradictory” assertions about Malesko and to "create causes of action.” See ante at 294-95 n. 4. Actually it is the majority that misunderstands Malesko. There is nothing "contradictory” in noting that Malesko did not reach the precise question as to whether a Bivens action would lie against individual private correctional providers but did recognize that they are government actors, because, as the case at hand demonstrates, it may be that no Bivens action lies even when defendants are government actors. Like the Malesko Court, I "create” no "cause of action” at all, but rather conclude that no Bivens action lies here. Government action is a necessary but not sufficient prerequisite to a Bivens action.

. This rationale is more than sufficient to address the majority’s policy concerns with extending Bivens actions. See ante at 289-90. Thus, no policy concern requires us to become the only circuit court to hold that individual private correctional providers are not governmental actors — a holding that may have untoward and far-reaching consequences beyond the Bivens context.