MANION, Circuit Judge,
concurring in part and dissenting in part.
Much attention will be focused on the fact that the court has sustained a complaint alleging that former-Secretary Rumsfeld was personally responsible for the torture of United States citizens. However, the most significant impact of the court’s holding is its extension of Bivens v. Six Unknoum Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, the court holds that a “Bivens remedy,” as implied causes of action for violations of constitutional rights have come to be known, is available to United States citizéns alleging torture while held in an American military prison in an active war zone. Present case law requires a very cautious approach before extending a Bivens remedy into any new context, and *628 emphasizes that there are many “special factors” present in this particular context that should cause us to hesitate and wait for Congress to act. Because the court has not exercised that restraint in this case, I respectfully dissent.
For starters, this case is not about constitutional rights, against torture or otherwise — the defendants readily acknowledge that the type of abuse alleged by the plaintiffs would raise serious constitutional issues. Rather, this case centers on the appropriate remedies for that abuse and who must decide what those remedies will be. Confronted by allegations as horrible as those described in this case, it is understandable that the court concludes that there must be a remedy for these plaintiffs. But that concern should not enable this court to create new law. For decades, the Supreme Court has cautioned that such decisions should be left to Congress, especially where there are “special factors counseling hesitation in the absence of affirmative action by Congress.” Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007); see also, e.g., Schweiker v. Chilicky, 487 U.S. 412, 421-23, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (refusing a cause of action of social security complaints); United States v. Stanley, 483 U.S. 669, 680-81, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (no cause of action by military service member when the injury arise out of activity incident to service). This longstanding reluctance creates a veritable presumption against recognizing additional implied causes of action. In line with this presumption, both circuits confronted with allegations of constitutional violations in war zones have refused to recognize a Bivens remedy. See Ali v. Rumsfeld, 649 F.3d 762, 772-73 (D.C.Cir.2011); Arar v. Ashcroft, 585 F.3d 559, 635 (2d Cir.2009). The court vaults over this consensus and, for the first time ever, recognizes a Bivens cause of action for suits alleging constitutional violations by military personnel in an active war zone. I dissent because sorting out the appropriate remedies in this complex and perilous arena is Congress’s role, not the courts’.[1]
Before explaining the particulars of my disagreement with the court, it is important to stress the proper questions before the court. Otherwise, given the severity of the allegations and the controversy surrounding the military policies underlying this case, we risk getting sidetracked. What we are asked to decide is simply who — the courts or Congress — should decide whether the courts will review constitutional claims against military personnel that arise in an active war zone, under what conditions and parameters that review should take place, and to what extent members of the military, whether high or low, should have immunity from suit.[2] Whether there should be judicial review of these claims is a policy question, one that I believe is outside the purview of this court to decide.
The Supreme Court refined its cautious approach to this question in Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007). There, it adopted a two-part test to determine whether to ex *629 tend implied actions into a new context. First, if there are adequate alternative remedies, there is no need for an implied Bivens remedy. And second, if there are “special factors counseling hesitation,” courts should leave the creation of new remedies to Congress, which is after all “in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public’s behalf.” Id. at 550, 562, 127 S.Ct. 2588. The court focuses most of its attention on the “special factors” prong of the test. I will follow suit and assume for the sake of argument that the first prong is satisfied and no meaningful alternative remedy exists in statute or regulation.[3] I think it clear that there are special factors and precedents that should control this case. The court holds otherwise, but I would point to what I see as the five defects in the court’s holding: (1) the lack of precedent in its favor; (2) the underestimation of the risks of judicial review of wartime military activity; (3) its unsuccessful attempt to distinguish precedent from other circuits; (4) the inapplicability of recent habeas corpus jurisprudence; and finally (5) the failure to recognize the consequences of its holding and the precedent it sets.
The resolution of the special factors analysis is straightforward. If anything qualifies as a “special factor[] counseling hesitation,” it is the risk of the judiciary prying into matters of national security or disrupting the military’s efficient execution of a war. National security matters are “rarely proper subjects for judicial intervention,” Haig v. Agee, 453 U.S. 280, 292, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981), and “courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.” Dep’t of Navy v. Egan, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). In that arena, courts will necessarily have to pass judgment on sensitive matters of military policy, including who is (or should be) responsible for making and implementing that policy at various- levels. Further, judicial review of wartime décisions will necessarily involve significant amounts of classified materials, generating public discussion of sensitive matters of national security in open court. The uommonsense understanding that the courts should exercise caution before venturing out into the battlefield is reflected in the limited precedent to date. While the Supreme Court has not taken up the question of Bivens in the context of wartime military actions, the D.C. Circuit and the en banc Second Circuit have both concluded that Bivens should not extend to suits by wartime detainees. See Ali, 649 F.3d at 772-73; Arar, 585 F.3d 559. We should follow our sister circuits in leaving for Congress the task of addressing the “who,” “what,” “when,” “where,” “why,” and “how much” questions of civil damages remedies for military decisions in wartime, rather than exploring an uncharted maze of military and national security policy in a foreign war zone.
The court’s citations seem to acknowledge this lack of precedent. All of the cases it cites in its favor addresses different contexts and different special factors. It approaches the “special factors” analysis in this case by arguing that the military detainee context is not that much different from other contexts in which Bivens actions have been allowed. But these cases *630 are largely beside the point, because they do not concern the legitimate special factors of national security and military policy at play in this case. The court points out precedent that Bivens claims have long been “available to prisoners who assert that they have been abused or mistreated by their federal jailors,” see, e.g., Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); (Opn. at 615-16) that the Supreme Court, this court, and others haye allowed Bivens claims to continue against military officials, Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and even cabinet members, Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)[4] These cases do establish that a Bivens remedy may lie against military personnel — and even their cabinet-level superiors — in a domestic setting. But because none of them involved claims arising abroad or during war, they do not provide any guidance to the issue at the heart of this case. Namely, whether judicial review of actions undertaken by the military in an active foreign war zone raises special factors that should caution us to hesitate and allow Congress to create an appropriate cause of action.
Second, the court understates the - difficulties that inhere in judicial review of military activity in a time of war. While it does acknowledge the issue, the court does not appear to appreciate just how much judicial review might intrude on difficult and sensitive matters. The court argues— as did Judge Calabresi in his dissenting opinion in Arar — that the state secret privilege is all the protection we need to safeguard confidential matters of national security from compromise in open court. See Arar, 585 F.3d at 635 (Calabresi, J. dissenting). But sorting out claims of privilege would itself entail significant judicial intrusion in national security affairs, and Congress is in a much better position to balance the competing needs for national security and the vindication of citizens’ constitutional rights. The court also stresses that the judicial scrutiny in this and other cases will be “well after the fact” and “should not impinge inappropriately on military decision-making.” (Opn. at 618) But it should go without saying that the existence of a civil damage remedy years down the line may affect decisions being-made on the same battlefield today, by the same or similarly situated individuals. That is not to say that some judicial review in this area may not be necessary— I agree with the court that allegations of torture against a U.S. citizen are a very serious matter. But given the significant pitfalls of judicial entanglement in military decisionmaking, it must be Congress, not the courts, that extends the remedy and defines its limits.
Third, the court too-casually sidesteps the weight of precedent from other circuits that Bivens should not be extended to suits against military officials for wartime actions. See Ali, 649 F.3d at 772-73; Arar, 585 F.3d 559. It does this by pointing out that those cases involved aliens, rather than citizens. But the foreign status of the plaintiffs and potential foreign policy implications were hardly the only special factors at play in those decisions. In its en banc decision refusing to recognize a Bivens remedy, the Second Circuit also listed three other special factors: na *631 tional security interests, confidential information, and the risks posed by proceedings in open court. Arar, 585 F.3d at 575, 576-77. And the D.C. Circuit has consistently referred to the risk of “obstructing national security policy” and has recently stressed that “allowing a Bivens action to be brought against American military officials engaged in war would disrupt and hinder the ability of our armed forces to act decisively and without hesitation in defense of our liberty and national interests.” Ali, 649 F.3d at 773; see also Rasul v. Myers, 563 F.3d 527, 532 n. 4 (D.C.Cir.2009) (Rasul II) (internal quotes omitted).[5]
Fourth, the court cites recent Supreme Court habeas corpus cases approving limited judicial oversight over military detention decisions, but these are clearly inapposite. The defendants cogently object that the fact that Congress has permitted the limited relief of habeas corpus actions — essentially equitable relief — says next to nothing about whether the courts should give the green light to a much broader implied cause of action for money damages. To this, the court responds that “those [habeas] cases also involve some judicial inquiry into matters affecting national security and military activity,” and therefore “weigh against the argument that the courts must simply defer to executive authorities in a case involving alleged torture of a U.S. citizen in U.S. military custody.” (Opn. at 619 n. 18) This rejoinder misses the point entirely, however. I emphasize once again that it is not a question of deferring to executive authority, but to Congress. And the question is not whether the courts are competent to review military decisions, nor even whether such review would be necessary or wise. The only question before us is whether these complex questions of military efficiency, national security, and separation of powers constitute “special factors counseling hesitation.” Clearly they do, and therefore Supreme Court precedent dictates that these sensitive questions be left for Congress to resolve through the creation (or not) of a cause of action for civil remedies.
Finally, the court does not recognize the far-reaching implications of its holding. It stresses that its holding is limited to “the narrow question presented by the extraordinary allegations now before us.” (Opn. at 624) That is, the remedy extends (at least for now) only to U.S. citizens who are tortured — and perhaps to other, nebulous “core constitutional rights” — while in U.S. military custody in a war zone. The court offers no logical reason why its unprecedented holding that a Bivens remedy is available for allegations of torture by military personnel in an active war zone should not extend to other constitutional violations. Instead, the court labels such concerns “not convincing.” (Opn. at 624) But claims similar to those before us could certainly proliferate based on this precedent. Given the enormous numbers of civilian contractors working in the current foreign war zones (a fact to which the court itself alludes), the potential scope of the court’s Bivens remedy is itself a special factor that should cause us to hesitate *632 before taking this first step. Unfortunately, fraud and corruption among American workers in a war zone is not rare. These and common crimes of robbery and assault can land an American civilian in the brig under military supervision. The voluminous litigation by prisoners in our domestic prisons evidence the possibility of “well pleaded complaints” under the Bivens framework by Americans who claim torture and other cruel and unusual treatment while being held in a military prison in a war zone. Which of the potentially thousands of wartime claims from American employees of contractors (or others) will the court entertain under this new cause of action? Future courts should not have to put the lid back on Pandora’s Box.
For these reasons, I dissent from the court’s decision to allow the plaintiffs constitutional claims to proceed.[6] I concur with the court’s dismissal of plaintiffs’ Administrative Procedure Act claims.

. I concur, however, in the court’s dismissal of the plaintiffs' property claims pursuant to the military authority exception to the Administrative Procedure Act.

. The court's rhetorical dissection of "immunity” obscures, rather than clarifies, an already complex and confusing issue. Whether a Bivens remedy is available and whether particular federal officials are entitled to either absolute or qualified immunity are entirely distinct questions. “Immunity” is indeed an issue elsewhere in this suit, see infra note 5, but primarily the issue before us is whether or not there is an implied Bivens cause of action directly under the Constitution.

. A distinguished collection of fourteen former Secretaries of Defense and Members of the Joint Chiefs of Staff filed an amicus brief urging us to wait for Congress to decide how to handle alleged constitutional violations by military personnel. They make a strong case that there are adequate alternative remedies that the plaintiffs have not pursued, contrary to the court’s conclusion.

. The court also correctly notes that United States citizens do not lose their constitutional rights when they venture abroad. I stress again that the lack of an implied cause. of action under Bivens does not strip plaintiffs here of their constitutional rights (against torture or anything else) in a war zone; it merely forces Congress to sort out a difficult issue. Moreover, the court’s citations involve military trials for civilians and habeas corpus rights for citizens, and have nothing to do with liability under Bivens (or any other cause of action). (Opn. at 616-17)

. The court also distinguishes Rasul II because it involved detainees who were known or potential terrorists, whereas here the plaintiffs "have not been charged with, let alone convicted of, any terrorist activity.” (Opn. at 621) But the plaintiffs were obviously considered a security threat when they were first apprehended; why should the fact that the military eventually concluded otherwise be relevant to the Bivens special factor analysis? Instead, it highlights why the court should not be picking and choosing between various constitutional tort claims based on "countervailing factors that might counsel alacrity or activism,” which have never been a part of the Bivens special factors analysis. Arar, 585 F.3d at 573-74.

. I also have serious reservations about other aspects of the court's opinion, especially its holding that Secretary Rumsfeld may be held personally liable for the alleged actions of his subordinates under the plaintiffs’ allegations. The court identifies two alleged bases for Secretary Rumsfeld's personal responsibility — his actual authorization of abusive interrogation techniques at the time plaintiffs allege they were tortured, and his deliberate indifference in the face of knowledge of ongoing abusive treatment of detainees, including Americans. The first set of allegations is entirely speculative. The purported basis is a single article in the New York Times that does not actually support the plaintiffs' claims that Secretary Rumsfeld approved the continued use of the techniques in question via confidential addendum to the Army Field Manual. The article states neither that the confidential addendum approved the techniques, nor that the addendum was ever approved. The second set of allegations may have greater plausibility, but the court's opinion does not explain why the predicates for deliberate indifference in the military context (far removed from the usual prison context) are sufficiently clearly established as to defeat qualified immunity.