**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ANDERSON COUTINHO SILVA,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA;
BRANDON SHAW,

    Defendants - Appellees.

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

No. 21-1008
(D.C. No. 1:19-CV-02563-CMA-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**\*

_____

Before **HARTZ**, **SEYMOUR**, and **BALDOCK**, Circuit Judges.

_____

Today, we are called upon to expand the judicially implied cause of action described

in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971). Such action, however, was considered "a 'disfavored' judicial activity," *Ziglar v.*

*Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)),

*before* the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

That decision saw the Supreme Court consider, amongst other things, a claim that closely

resembled the facts of *Bivens* itself. *See id.* at 1800–02, 1804–07. It nevertheless rejected

the Ninth Circuit's decision to allow that claim to proceed out of hand. *Id.* at 1804–07.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.  We heed the Supreme Court's warning and decline Plaintiff's invitation to curry the Supreme Court's disfavor by expanding *Bivens* to cover his claim. Accordingly, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's disposition of this case.

I.

Plaintiff Anderson Silva is a prisoner at the United States Penitentiary in Florence, Colorado (ADX Florence).  The allegations of his complaint are as follows.  In 2018, Defendant Brandon Shaw, a corrections officer at ADX Florence, entered Plaintiff's cell while he was restrained.  According to Plaintiff, the prison's protocols do not allow corrections officers to fully enter an inmate's cell—an act that takes an officer outside the view of security cameras.  Once inside the cell, Defendant assaulted Plaintiff by slamming him on the floor, jumping on his back, and "applying painful pressure with his knee." Br. of Appellant 3. Defendant called for assistance and other officers arrived.  Plaintiff maintains that the other officers falsely accused him of assaulting Defendant.  In any event, Plaintiff claims he suffered injuries to his back, right leg, and left hand.

Proceeding pro se, Plaintiff filed suit against the United States and Defendant.[1] Plaintiff's complaint alleged violations of the Eighth Amendment under a *Bivens* cause of action and sought monetary damages and injunctive relief.  Defendant and the Government

---

[1] The only claim before us on appeal is Plaintiff's claim against Defendant for excessive use of force in violation of the Eighth Amendment.

filed a motion to dismiss Plaintiff's complaint and Defendant separately filed a motion for partial summary judgment.    After reviewing both motions, a magistrate judge recommended the district court dismiss Plaintiff's complaint with prejudice for failure to state a claim and deny Defendant's separate motion for partial summary judgment as moot. *Silva v. United States* (*Silva I*), No. 19-cv-2563-CMA-MEH, 2020 WL 8408472 (D. Colo. Sept. 10, 2020).  Plaintiff objected to the magistrate judge's recommendation.[2]  The district court, however, agreed with the magistrate judge and dismissed Plaintiff's complaint with prejudice.    *Silva v. United States* (*Silva II*), No. 19-cv-2563-CMA-MEH, 2020 WL 7706785 (D. Colo. Dec. 29, 2020).  Now represented by counsel, Plaintiff appeals and asks us to reverse the district court's decision.  Plaintiff offers two arguments in support of his claim that the district court erred.  First, Plaintiff asserts that his claim is not a *Bivens* expansion at all—that is, because his claim arises under the Eighth Amendment, he

---

[2] Defendant argues Plaintiff's claim is barred by the firm waiver rule.  Br. of Appellee 10–14.  We have "adopted the firm waiver rule, which bars appellate review of both factual and legal questions if a party fails to timely object to the magistrate judge's findings or recommendations."    *Laubach v. Scibana*, 301 F. App'x 832, 835 (10th Cir. 2008) (unpublished) (citing *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  The firm waiver rule applies to pro se suits brought by prisoners.  *See, e.g.*, *Duffield v. Jackson*, 545 F.3d 1234 (10th Cir. 2008); *Laubach*, 301 F. App'x 832; *Nasious v. Robinson*, 396 F. App'x 526 (10th Cir. 2010) (unpublished).  In addition to filing timely objections, a party must also provide "specific written objections" to the magistrate judge's recommendations. Fed. R. Civ. P. 72(b)(2); *Laubach*, 301 F. App'x at 835.  Plaintiff failed to meet these requirements because he only offered a single sentence about *Bivens* and cited authority addressing claims under 42 U.S.C. § 1983.  The district judge nevertheless found Plaintiff's objections sufficient.  *Silva II*, 2020 WL 7706785, at *4.  Although the district judge's decision to consider the merits of Plaintiff's claim does not bind us, *Laubach*, 301 F. App'x at 835, we exercise our own discretion to address the merits of the issue.  *See Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005).

believes it falls squarely within the confines of *Carlson v. Green*, 446 U.S. 14 (1980).

Second, Plaintiff argues that even if his claim requires expanding *Bivens*, such an

expansion is justified in his case. Both arguments rely on the two-step analytical

framework detailed in *Ziglar v. Abbasi*. The Supreme Court had yet to decide *Egbert v.

Boule* at the time the case was briefed and argued. Nevertheless, we resolve this case by

applying *Egbert*. With that said, we note that regardless of Plaintiff's protestations to the

contrary, his claim clearly constitutes an expansion of *Bivens* because "[a] claim may arise

in a new context even if it is based on the same constitutional provision as a claim in a case

in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct.

735, 743 (2020). The distinction between an excessive force claim like the one Plaintiff

brings and a deliberate indifference to medical needs claim—which the Supreme Court

recognized as a valid *Bivens* action in *Carlson*—is sufficient to conclude that Plaintiff's

claim would require an expansion of *Bivens* to move forward even though it originates

under the Eighth Amendment. *See id.*

## II.

This case is before us after the district court dismissed Plaintiff's complaint for

failure to state a claim with prejudice under Federal Rule of Civil Procedure 12(b)(6). "The

legal sufficiency of a complaint under Rule 12(b)(6) is a question of law which this Court

reviews *de novo*." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (citing *Sutton v.

Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). "To survive

a Rule 12(b)(6) motion, Plaintiff's complaint must allege sufficient facts to state a claim

for relief plausible on its face." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020)

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  For the purposes of such a motion, "we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)).

We consider this case in the aftermath of the Supreme Court's recent decision in *Egbert v. Boule*, which purports to alter the *Bivens* analysis.  Though the decision was only handed down recently, courts within our Circuit have already had to grapple with it and have noted our lack of guidance on how to do so appropriately.  *See Bivens v. Blaike*, No. 21-cv-783-PAB-NYW, 2022 WL 2158984, at *3–4 (D. Colo. June 15, 2022).  To place *Egbert* in some context, we begin with a brief history of the *Bivens* claim and its treatment by the Supreme Court.

The story of *Bivens* is a saga played out in three acts: creation, expansion, and restriction.  In 1971, the Supreme Court entered the first act by blurring the lines between an Article III decision and "judicial legislation."  *Bivens*, 403 U.S. at 430 (Blackmun, J., dissenting).  The landmark *Bivens* decision created a claim for damages that allowed the plaintiff to seek recovery from federal agents who had allegedly violated his Fourth Amendment rights by entering his home, placing him in manacles, and threatening his family.  *Id.* at 389 (majority opinion).  Reasoning that state law remedies were inadequate to rectify constitutional injuries and that "no special factors counsel[ed] hesitation in the absence of affirmative action by Congress," *id.* at 395–96, the Court fashioned an implied

5

claim for damages for *Bivens* despite the clear absence of textual support in the Fourth Amendment or authorization from Congress. *Id.* at 397.

Later that decade, the Supreme Court entered the second act of its *Bivens* jurisprudence. Beginning with *Davis v. Passman*, 442 U.S. 228 (1979), the Court initiated a period of *Bivens* expansion. In *Davis*, the Court held that *Bivens* extended to a claim by a former congressional aide against her former employer for discrimination in violation of the Fifth Amendment's Due Process Clause. *See id.* at 242–49. Shortly thereafter, the Supreme Court expanded *Bivens* one final time. On this occasion, in *Carlson v. Green*, the Court held that *Bivens* allowed a prisoner to bring suit against a prison official who was deliberately indifferent to his medical needs in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. *See* 446 U.S. 14. Thus, by the early 1980s, the Supreme Court had fashioned a claim for damages in three constitutional contexts: the Fourth Amendment's Search and Seizure Clause, the Fifth Amendment's Due Process Clause, and the Eighth Amendment's Cruel and Unusual Punishments Clause. *Schweiker v. Chilicky*, 487 U.S. 412, 420–21 (1988).

That expansion proved to be short-lived. Beginning in 1983, the Court started to approach requests to expand *Bivens* with greater hesitation. *See Bush v. Lucas*, 462 U.S. 367, 374–80 (1983); *Chappell v. Wallace*, 462 U.S. 296, 298–305 (1983); *United States v. Stanley*, 483 U.S. 669 (1987). It did so by placing greater emphasis on the "special factors counselling hesitation" and relying on them to reject proposed extensions. *See id.* Over time, the Court approached *Bivens* with increasing disfavor. The Court ultimately recognized that *Bivens*, *Davis*, and *Carlson* were the mistakes of an "*ancien regime*" that

6

was too willing to create implied causes of action. *Abbasi*, 137 S. Ct. at 1855 (quoting

*Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)).[3]  In the years since it first expressed

caution at the prospect of expanding *Bivens*, the Court has performed its own version of

Bonaparte's retreat from Moscow and progressively chipped away at the decision—to the

point that very little of its original force remains. *See Egbert*, 142 S. Ct. at 1799–800

(collecting cases).

    As for the *Bivens* analysis itself, it too has evolved over the years as the Court's

attitude towards the cause of action has changed.  In the early years of *Bivens*, the Court

essentially presumed new *Bivens* actions were valid "unless the action [wa]s 'defeated' in

one of two specified ways"—an express declaration from Congress creating a substitute

remedy or the existence of "special factors" that counselled "hesitation."  *Carlson*, 446

U.S. at 26–27 (Powell, J., concurring in the judgment).  At that time, however, the "special

factors" analysis was minimal and lacking in meaningful guidance. *See id.* at 27.  The

Court later flipped this presumption and held that "a court must take into account any

'special factors counselling hesitation'" *before* it created a *Bivens* claim.  *Chappell*, 462

U.S. at 298 (quoting *Bush*, 462 U.S. at 378); *see Stanley*, 483 U.S. at 678–79.  The Court

hewed to that principle in ensuing cases but left the term "special factors" undefined until

it decided *Abbasi* in 2017.  *See* 137 S. Ct. at 1857–58.  While the Court did not provide an

---

[3] Justice Kennedy noted that the Court's attitude towards implying causes of action generally started to change in the mid-1970s. *See Abbasi*, 137 S. Ct. at 1855.  That, however, did not prevent the Court from expanding *Bivens* on two occasions after that alleged change in attitude. *See Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14.

7

exhaustive list of factors, it emphasized the key point of the analysis: "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy." *Id.* at 1858. Thus, as of *Abbasi*, courts analyzed *Bivens* claims in a two-step process: first, a court had to ask whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859. Second, if the case is different—in other words if the "context is new"—then a court must analyze whether the "special factors counselling hesitation" apply such that it should not expand *Bivens*. *Id.* at 1857, 1859–60. The Court reaffirmed this framework as recently as 2020. *Hernandez*, 140 S. Ct. at 743.

This leads us to the Supreme Court's decision in *Egbert*, where the Supreme Court appeared to alter the existing two-step *Bivens* framework by stating that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."[4] 142 S. Ct. at 1803. In *Egbert*, the Supreme Court considered two *Bivens* claims: (1) a Fourth Amendment excessive force claim that "present[ed] 'almost parallel circumstances'" to *Bivens* itself, *id.* at 1805, and (2) a novel First Amendment retaliation claim. *Id.* at 1807–08. Both claims arose out of the plaintiff's interactions with the U.S. Border Patrol. *Id.* at 1799–1802. The plaintiff, a bed-and-breakfast operator and Border Patrol confidential informant, alleged that a Border Patrol

---

[4] *Egbert* does not overrule *Abbasi* or *Hernandez*. *See Egbert*, 142 S. Ct. 1793. We decline to address or resolve any tension between *Egbert* and these prior decisions because it is not necessary to dispose of the appeal before us.

agent used excessive force on him while trying to conduct a search on the plaintiff's property. *See id.* at 1801. The plaintiff also claimed that the Border Patrol agent retaliated by reporting him to the IRS after the plaintiff filed a grievance with the Border Patrol. *Id.* at 1802. The Court concluded both claims would be expansions of *Bivens* beyond the three previously recognized cases. *Id.* at 1804, 1807.

In declining to extend *Bivens* to the plaintiff's Fourth Amendment claim, the Court reasoned it failed "for two independent reasons." *Id.* at 1804. First, the Court asked whether "*Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858). To answer that question, the Supreme Court rejected the Ninth Circuit's decision to approach the analysis "at too granular a level." *Id.* at 1806. Instead, the Court in *Egbert* analyzed the question at a high level of generality and asked "whether a court is competent to authorize a damages action not just against Agent Egbert but against Border Patrol agents generally." *Id.* The Court concluded that "[t]he answer, plainly, is no" and primarily relied on the national security implications of the border context as support. *Id.* (citation omitted). Second, the Court held that "Congress has provided alternative remedies for aggrieved parties in Boule's position that independently foreclose a *Bivens* action." *Id.* The Court specified that an alternative remedial scheme need not "afford [a plaintiff] rights to participation or appeal" to be adequate "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001)). A remedy is sufficient to foreclose a *Bivens* action, then, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to

9

secure an adequate level of deterrence." *Id.* at 1807. The Court concluded that the Border Patrol's internal grievance process satisfied this requirement and foreclosed *Bivens* relief. *Id.* at 1806–07.

With respect to the plaintiff's First Amendment retaliation claim, the Court differentiated it from the Fourth Amendment claim by noting that it had never recognized a *Bivens* claim in a First Amendment context before. *Id.* at 1807. The Court emphasized that recognizing a new *Bivens* action is an extreme course of action that "entail[s] substantial social costs." *Id.* (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Federal employees," the Court reasoned, "'face[d with] the added risk of personal liability for decisions that they believe to be a correct response to improper [activity] would be deterred from' carrying out their duties" if *Bivens* was expanded to cover First Amendment retaliation claims. *Id.* (alterations in original) (quoting *Bush*, 462 U.S. at 389). Therefore, the Court was "'convinced' that, in light of these costs, 'Congress is in a better position to decide whether or not the public interest would be served' by imposing a damages action." *Id.* (quoting *Bush*, 462 U.S. at 390).

We take several lessons from *Egbert*. First and foremost, we are left in no doubt that expanding *Bivens* is not just "a disfavored judicial activity," *id.* at 1803 (quoting *Abbasi*, 137 S. Ct. at 1857) it is an action that is impermissible in virtually all circumstances. *See id.* at 1803–07; *id.* at 1809–10 (Gorsuch, J., concurring in the judgment). The Supreme Court's rejection of the plaintiff's Fourth Amendment claim, despite its close resemblance to the facts of *Bivens* itself, underscores the extent of the Court's disfavor towards *Bivens* claims. *See id.* at 1810 ("Candidly, I struggle to see how

10

this set of facts differs meaningfully from those in *Bivens* itself."); *id.* at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("At bottom, Boule's claim is materially indistinguishable from the claim brought in *Bivens*.").  Though the failure of that claim raises a question aptly posed by Justice Gorsuch—"[w]hen might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action?" *id.* at 1809 (Gorsuch, J., concurring in the judgment)—we do not endeavor to answer that question here.  Instead, we emphasize what we view as the key takeaway from *Egbert*, namely, that courts may dispose of *Bivens* claims for "two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs."  *Id.* at 1804 (majority opinion) (emphasis added).

## III.

We now apply *Egbert* to Plaintiff's claim.  Because the Supreme Court has recognized independent means of disposing of *Bivens* claims, we focus our analysis on the alternative remedial schemes available to Plaintiff.  Plaintiff's excessive force claim arises in the federal prison context because he asserts a claim against a Bureau of Prisons ("BOP") official.  As such, Defendant argues that the BOP Administrative Remedy Program qualifies as an adequate alternative remedy for Plaintiff's claim.  Br. of Appellee 24–25. The magistrate judge and district judge considering the case below both list the BOP's Administrative Remedy Program as one of several adequate alternative remedies available to Plaintiff.  *Silva I*, 2020 WL 8408472, at *6; *Silva II*, 2020 WL 7706785, at *6.  Plaintiff disagrees.  He argues the BOP Program "is not the kind of 'alternative remedial structure'

the Supreme Court has described" because "the Administrative Remedy Program is a regulatory creation of the BOP" and "offers no indication that Congress sought to displace a *Bivens* remedy with any administrative regime." Br. of Appellant 22–23.

But Plaintiff's argument falls short for two reasons. First, Plaintiff's argument that the BOP Program is inadequate because it is a regulatory scheme rather than a congressionally mandated one cannot stand in the wake of *Egbert*. The Supreme Court expressly stated that an alternative remedial scheme is sufficient "[s]o long as *Congress or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence." *Egbert*, 142 S. Ct. at 1807 (emphasis added). The fact that the BOP Administrative Remedy Program is a regulatory scheme is therefore irrelevant to any determination of adequacy. Second, the Supreme Court has long since described the BOP Administrative Remedy Program as an adequate remedy. *See Malesko*, 534 U.S. at 74 ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program."). We therefore have little difficulty concluding that the BOP Administrative Remedy Program is an adequate "means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring." *Id.* "[B]ecause *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,'" we find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.

12

*Egbert*, 142 S. Ct. at 1806 (quoting *Malesko*, 534 U.S. at 71). Accordingly, we need not inquire any further to decide this appeal.[5]

IV.

In sum, Plaintiff's *Bivens* claim is foreclosed by the availability of the BOP Administrative Remedy Program to address his complaint. For the foregoing reasons, we **AFFIRM** the district court's dismissal of Plaintiff's complaint **WITH PREJUDICE**.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[5] We do not address whether the other remedies presented in the parties' briefs and considered by the district court below qualify as adequate alternatives for *Bivens* because that discussion is unnecessary. Likewise, we do not wade into the other independently sufficient grounds for disposing of this appeal, namely, "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. Nothing in this Order and Judgment should be read as expressing our views on either subject.