**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

AUG 15 2023

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SHANNON WILLIAMS,

        Plaintiff-Appellant,

 v.

ANTHONY VERNA; BROWN,

        Defendants-Appellees,

 and

PAUL COPENHAVER,

        Defendant.

No.   19-15978

D.C. No.
1:16-cv-00764-AWI-SAB

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted July 19, 2023
San Francisco, California

Before:  SILER,** WARDLAW, and M. SMITH, Circuit Judges.

Shannon Williams appeals the district court's decision granting summary

---

     *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     **     The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

judgment to Defendants-Appellees Anthony Verna and Joshua Brown on the basis that he lacks a remedy under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Because the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

To determine whether a *Bivens* claim is cognizable, a court first "ask[s] whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). The Court's "understanding of a 'new context' is broad," and a claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). If a claim arises in a new context, the court then asks "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U.S. at 136).

Williams's Fourth and Eighth Amendment claims arise in new contexts.[1] Williams argues that his Fourth Amendment strip-search claim arises in the same context as *Bivens*, which also involved a Fourth Amendment claim, rank-and-file officers, and a strip search. However, as the district court correctly determined, the prison context makes this case meaningfully different. In *Bivens*, the plaintiff was searched incident to an allegedly unlawful arrest as part of the booking process. *See* 403 U.S. at 389. Here, Williams was subjected to a contraband search in a federal prison, which alters the Fourth Amendment reasonableness calculus. *See Bell v. Wolfish*, 441 U.S. 520, 559–60 (1979) (noting that "[a] detention facility is a unique place fraught with serious security dangers," and therefore an incarcerated person's privacy interests must be balanced against the "significant and legitimate security interests of the institution"). This distinction is enough to create a new context. *See Abbasi*, 582 U.S. at 147 ("[E]ven a modest extension [of *Bivens*] is still an extension.").

With respect to his Eighth Amendment claim, Williams argues that it does not present a new context because it is akin to the claims in *Carlson v. Green*, 446 U.S. 14 (1980), and in *Farmer v. Brennan*, 511 U.S. 825 (1994). Both are factually

---

[1] In his Opening Brief, Williams also challenged the district court's decision granting summary judgment to defendants on his First Amendment retaliation claim. After that brief was filed, the Supreme Court held that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 142 S. Ct. at 1807. Accordingly, Williams no longer pursues his retaliation claim.

distinct.  *Carlson* involved allegations of prison officials' failure to provide medical treatment to an inmate in critical condition.  446 U.S. at 17 n.1.  By contrast, Williams claims that prison officials caused him distress and embarrassment by forcing him to walk around exposed and by keeping him in a holding cell without allowing him to use the bathroom, causing him to urinate on himself.  Thus *Carlson* is distinct.  *See Abbasi*, 582 U.S. at 147–48 (describing claims of mistreatment of prisoners not related to medical care as a "modest extension" of *Carlson*).  To the extent that *Farmer* is a proper comparator case for the "new context" analysis, it is also distinct.  In *Farmer*, an inmate brought a deliberate indifference claim against officials when she was assaulted by another inmate.  511 U.S. at 829–31.  In contrast, Williams alleges that he was harmed by Verna and Brown, not by other inmates.

Because Williams's claims present new contexts, a *Bivens* remedy may be implied only if no special factors counsel hesitation.  *See Egbert*, 142 S. Ct. at 1803. The Supreme Court has clarified that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure."  *Id.* at 1804 (quotation omitted).  The BOP's administrative grievance procedure "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10(a); *see id.* § 542.11(a)(3) (directing BOP officials to "[c]onduct an investigation into each Request or Appeal").  This provides an alternative remedial structure that precludes

4

*Bivens* relief. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (declining to extend *Bivens* to claim against corporation operating BOP halfway house and noting that "inmates in respondent's position also have full access to remedial mechanisms established by the BOP").

Williams argues that the BOP grievance procedure was not an adequate alternative remedy because Verna and Brown retaliated against him for attempting to use it. However, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Egbert*, 142 S. Ct. at 1807 (quotation omitted). Because Williams's claims arise in new contexts and special factors apply, his claims are not cognizable under *Bivens*.

**AFFIRMED.**