**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 24-13126
Non-Argument Calendar
_____

AARON MICHAEL MURRAY,

*Plaintiff-Appellant,*

*versus*

E.K. CARLTON,
Individual Capacity as Prior Warden of FCI Coleman
Medium, et al.,

*Defendants,*

JEANETTE MIRANDA,
Individual Capacity as FNP BC,
LINDA CRISWELL,
Individual Capacity as PA-C,
RICHARD QI LI,
Individual Capacity as M.D.,
MICHELLE CORTOPASSI,
Individual Capacity as Unit C-3 Counselor,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:21-cv-00424-KKM-PRL

_____

Before NEWSOM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Aaron Murray seeks review of the district court's order disposing of his *Bivens* action[1] against federal prison officials. In short, Murray alleged that the officials were deliberately indifferent to his medical needs, in violation of the Eighth Amendment. The district court (1) granted judgment on the pleadings to two defendants, (2) granted a motion to dismiss for failure to state a claim to a third defendant, and (3) dismissed *sua sponte* the claim against the remaining defendant.

The district court held that Murray's *Bivens* claims were not cognizable because his case presented a "new *Bivens* context" and because an alternative remedy existed—specifically, the Federal Bureau of Prisons' grievance system. Murray argues on appeal that his case does not present a new *Bivens* context because his case is "materially indistinguishable" from *Carlson v. Green*, 446 U.S. 14 (1980), in which the Supreme Court permitted a *Bivens* claim brought by the estate of a federal prisoner for failure to provide

_____

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc.*, 403 U.S. 388 (1971).

medical care.  After careful review, we affirm the district court's order.

The facts are known to the parties, and we repeat them here only as necessary to resolve the case.[2]

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court recognized a damages action alleging that federal law-enforcement agents had violated the Fourth Amendment's prohibition on unreasonable searches and seizures. 403 U.S. 388, 397 (1971).  In the ensuing decade, the Court expanded the *Bivens* remedy and recognized two additional causes of action against federal officials: for a claim that a congressman had engaged in sex discrimination in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and, as relevant here, for a claim that federal prison officials had exhibited deliberate indifference to an inmate's medical needs in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980).

Since then, though, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants."  *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting

---

[2] We review a court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo.  *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).  We also conduct de novo review of both a court's *sua sponte* dismissal for failure to state a claim under 28 U.S.C. § 1915A(b)(1), *Christmas v. Nabors*, 76 F.4th 1320, 1328 (11th Cir. 2023), and a court's ruling on a motion for a judgment on the pleadings, *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  Indeed, the Court has "stated that expansion of *Bivens* is 'a "disfavored" judicial activity,'" *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020) (quoting *Ziglar*, 582 U.S. at 135), and that "it is doubtful that we would have reached the same result" "if 'the Court's three *Bivens* cases [had] been . . . decided today,'" *id.* at 101–02 (quoting *Ziglar*, 582 U.S. at 134) (alteration in original).

To determine whether a *Bivens* claim is cognizable, we engage in a two-step analysis.  *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *Johnson v. Terry*, 119 F.4th 840, 851 (11th Cir. 2024).  We first "ask 'whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action.'" *Johnson*, 119 F.4th at 851 (quoting *Robinson v. Sauls*, 102 F.4th 1337, 1342 (11th Cir. 2024)).

If the answer is "yes," we then ask whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quoting *Egbert*, 596 U.S. at 492). And, if "there is *any* rational reason (even one) to think that *Congress* is better suited" to that task, then we must conclude that a *Bivens* remedy is unavailable.  *Egbert*, 596 U.S. at 496 (emphasis in original).  One reason to think that Congress is better suited to the task is if it, either on its own or through the Executive Branch, has put in place "an alternative remedial structure." *Id.* at 493 (quoting *Ziglar*, 582 U.S. at 137).

Murray contends that his case does not present a new *Bivens* context because his case is "materially indistinguishable" from *Carlson*. We disagree.

In *Carlson*, the estate of a federal prisoner sued federal prison officials alleging that their acts and omissions in the treatment of the prisoner led to his death. *Carlson*, 446 U.S. at 16 & n.1. More specifically, the estate alleged that prison officials "failed to give [the prisoner] competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe . . . and delayed for too long a time his transfer to an outside hospital," all of which resulted in his death. *Id.* at 16 n.1.

Here, Murray only alleges non-fatal physical injuries. He alleges that he suffered severe physical pain from gallstones and inflammation of the gallbladder over the course of nine months due to the indifference of prison officials and medical providers. In particular, he alleges that prison officials delayed scheduling his surgery to remove his gallbladder and gallstones and failed to give him the pain medication that a doctor had prescribed him—namely, hydrocodone. He alleges that "[b]eing in chronic pain for an extended period of time caused a documented increase in [his] blood pressure, which in turn caused an unnecessary strain to be put on his heart," which was already weak because he suffered from Bicuspid Aortic Valve Disease. Ultimately, Murray did receive surgery to remove his gallbladder and gallstones.

While both *Carlson* and Murray's case involve the same constitutional right—namely, the Eighth Amendment right not to be treated with deliberate indifference—and mechanism of injury, that does not make them indistinguishable, as Murray contends. *Johnson*, 119 F.4th at 851 ("[F]or a case to arise in a previously recognized *Bivens* context, it is not enough that the case involves the same constitutional right and 'mechanism of injury.'" (quoting *Ziglar*, 582 U.S. at 139)). "[E]ven small differences can 'easily satisf[y]' the new context inquiry so long as they are meaningful." *Id.* at 859 (quoting *Ziglar*, 582 U.S. at 149) (alteration in original); *see id.* at 851 (listing examples of ways cases can differ).[3]

Last year, this Court decided a case similar to Murray's in *Johnson v. Terry*, 119 F.4th 840 (11th Cir. 2024).[4] In *Johnson*, we held

---

[3] For example:

> "A case might differ in . . . meaningful way[s] because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."

*Johnson*, 119 F.4th at 851 (quoting *Ziglar*, 582 U.S. at 139–40).

[4] Murray argues that *Johnson* was wrongly decided. However, we are bound to follow *Johnson* under our prior precedent rule. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "Under that rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or

that a federal prisoner's Eighth Amendment deliberate-indifference claims presented a new *Bivens* context because (1) the *Carlson* Court "did not consider whether there were alternative remedies under the current alternative remedy analysis," *id.* at 858 (citing *Ziglar*, 582 U.S. at 148), and (2) "[t]he severity, type, and treatment of Johnson's injuries differ[ed] significantly from those of the prisoner in *Carlson*," *id.* at 859. Like Murray, Johnson alleged that "prison officials" and "medical officers in the prison" deprived him of "'medically necessary assistance,' including the treatment prescribed by a doctor" for non-lethal physical injuries. *Id.* (citation omitted).

We agree with the district court that *Johnson* applies foursquare here. It is true here, as it was there, that *Carlson* is distinguishable because the Supreme Court there "did not apply the current alternative remedies analysis to the claim." *Id.* When it decided *Carlson*, the Court considered not whether there were *any* alternative remedies available to the federal prisoner but, rather, whether "Congress ha[d] provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson*, 446 U.S. at 18–19 (emphasis in original). And just as was the case in *Johnson*, another meaningful difference is "[t]he severity, type, and treatment" of Murray's alleged injuries. *Johnson*, 119 F.4th at 859. Unlike the prisoner in *Carlson*, who died from an asthmatic attack, Murray alleges only "non-lethal physical injuries to his body that

---

undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *Id.*

were eventually treated by the defendants." *Id.* Therefore, Murray's case—like Johnson's—arises in a new *Bivens* context.

We next turn to step two of the *Bivens* analysis. "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* (quoting *Egbert*, 596 U.S. at 492). In *Johnson*, we identified a reason to pause: "Congress, through the Executive Branch, ha[d] authorized an alternative remedy" for federal prisoners—"the BOP's [Bureau of Prisons'] administrative remedy program." *Id.* Here, the BOP's administrative remedy program was available to Murray, and the record shows that Murray used it. Thus, "[w]e cannot extend *Bivens* here because doing so would 'arrogate legislative power' and allow federal prisoners to bypass the grievance process put in place by Congress through the Executive Branch." *Id.* at 862 (quoting *Egbert*, 596 U.S. at 492).

Because we conclude that Murray's *Bivens* claims are not cognizable, we need not address whether Murray has properly stated deliberate-indifference claims.

⋆  ⋆  ⋆

For the foregoing reasons, we hold that Murray's claims are not cognizable, and we affirm the district court's order granting judgment on the pleadings to Jeannette Miranda and Richard Qi Li, granting Linda Criswell's motion to dismiss, and *sua sponte* dismissing the claim against Michelle Cortopassi.

**AFFIRMED.**